490 A.2d 887

**COMMONWEALTH of Pennsylvania**

v.

**Jerry E. KARL, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 21, 1985.

Filed March 22, 1985.

494

William H. Poole, Jr., York, for appellant.

Thomas L. Donahoe, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before POPOVICH, WATKINS and LIPEZ, JJ.

POPOVICH, Judge:

This is an appeal by the appellant, Jerry E. Karl, from the judgment of sentence for the summary offenses of driving an unregistered vehicle ($25.00 fine plus costs of prosecution) and leaving the scene of an accident ($25.00 fine plus costs of prosecution). We affirm in part and reverse in part.

The evidence, viewed in a light most favorable to the verdict-winner, reveals that at approximately 10:20 p.m. on the 22nd of September, 1981, the appellant was driving his girlfriend's (Elaine Marden's) Chevette at a rate of 2–3 miles per hour in order to coax her back into the vehicle. She refused his importunings and continued to walk on the sidewalk with him driving along side of her. The end result of this lover's quarrel was that the appellant struck a vehicle driven by Michael E. Grove. The appellant left the scene and Mr. Grove pursued long enough to secure the striking vehicle's license number. Mr. Grove, with his two passengers, returned to the scene to pick up some of the debris left on the street from the accident. By this time the police had arrived on the scene and obtained a description of the fleeing vehicle from Grove, his passengers and the appellant's girlfriend, who was still at the site.

During questioning by the police, Grove happened to look down the street and observed the appellant standing on the corner. Grove reacted by telling the police, "Over there he is." Appellant's girlfriend confirmed this and called over to the appellant, but "he stood there. That was it." However, when he started to walk away, the two officers "ran after him[ and] caught up to Mr. Karl as he was opening the driver's door to a dark green Chevette bearing the registration which [they] had been given." The appellant was then placed under arrest and taken down to headquarters and charged with various offenses, only two of which are at issue here.

■ On the charge of leaving the scene of an accident involving an attended vehicle (75 P.S. § 3743), we find that

sufficient evidence was presented by the prosecution to warrant affirmation of the sentence imposed. For example, testimony from Grove, his two passengers, the appellant's girlfriend and even the appellant confirmed the occurrence of a collision. The only explanation proffered by the accused was that he did not realize that an accident had occurred until minutes after leaving the scene. When he returned, on one occasion he claims, no one was present. The trier of fact, being the ultimate arbiter on this credibility question, disbelieved the appellant's version. We see no reason to overturn such a finding when it is supported by the record. *Commonwealth v. Penn*, 497 Pa. 232, 439 A.2d 1154 (1982).

■ We reach a different result in regard to the conviction of driving an unregistered vehicle. The statute in question reads:

It is a summary offense for any person to drive or for an owner knowingly to permit to be driven upon any highway any vehicle of a type required to be registered under this chapter which is not registered or for which the appropriate fee has not been paid when and as required in this title.

The Act of June 17, 1976, P.L. 162, No. 81, § 1, effective July 1, 1977; 75 P.S. § 1301.

At trial, the following evidence is the sole basis for the driving an unregistered vehicle conviction; *viz.:*

## DIRECT EXAMINATION

BY MR. GENT [Commonwealth's Attorney]:

THE COURT: You're still under oath, ma'am.

Q. Elaine, turning your attention back to the evening in question, you were the owner of the green Chevette that was driven by Mr. Karl?

A. Yes, I was.

Q. Would you tell the judge whether that car at that time had a valid registration or not?

A. It was not registered.

Q. And why was it not?

A. It expired.

Q. Now, had you communicated that fact in any way to Mr. Karl at any time prior to that evening?

A. No, because we didn't plan to be driving that car.

Q. So, to your knowledge, he was not aware that it was unregistered?

A. I really don't know whether he was or not.

MR. GENT: That's all I have, Your Honor.

MR. FITZKEE [Appellant's Attorney]: No questions.

THE COURT: You may step down. Do you want to put him on for any purpose?

MR. FITZKEE: No.

THE COURT: I'll assume then that he knew that they were expired, Mr. Fitzkee. (RR. 174a–175a)

We find that the trial court's *assumption* was not consonant with accepted principles of law on the question of establishing one's guilt to a level of "beyond a reasonable doubt."

We recently have had occasion to discuss at length the burden of proof as it applies to criminal cases. In particular, the crime of carrying a firearm without a license and the manner in which proof of licensure can be accomplished and by whom it is to be met. The discourse is instructive to us now; to-wit:

"a State must prove every ingredient of an offense beyond a reasonable doubt and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense."

To hold that the prosecution had satisfied its burden, we believe, would have required the trier of fact to make an unwarranted inference of the presumed fact (nonlicensure under section 6106(a)) from the proven fact of appellant's nonlicensure in the City of Beaver Falls. This presumption, being a procedural device adhered to in Pennsylvania,

not only permits an inference of the "presumed" fact, but also shifts to the opposing party the burden of producing evidence to disprove the presumed fact. Failure to meet this burden of production will normally result in binding instructions on the issue of the presumed fact's existence in favor of the party invoking the presumption. But the notion of a directed verdict against a criminal defendant is contrary to accepted tenets of criminal justice. Placing the burden of production on a defendant under the threat of such a sanction would run afoul of the presumption of innocence, *see Commonwealth v. Bonomo*, 396 Pa. 222, 229–230, 151 A.2d 441, 445–446 (1959), as well as the defendant's privilege of declining to testify. Thus, where the presumed fact comprises an element of the crime charged, the inference authorized by a presumption can never be compelled by the court. *See generally Commonwealth v. Turner*, 456 Pa. 116, 317 A.2d 298 (1974).

*Commonwealth v. DiFrancesco*, 458 Pa. 188, 193 n. 3, 329 A.2d 204, 207 n. 3 (1974). It requires noting that in *DiFrancesco* our Supreme Court, in accepting a statutory inference in a criminal case involving driving while under the influence of intoxicating liquor, held that when an inference is used in a criminal case such inference must meet the "beyond a reasonable doubt" standard of proof. The reasonable doubt standard requires that when the inferred fact is an essential element of the crime charged, that fact must logically flow from the given fact beyond a reasonable doubt. *Commonwealth v. Slaybaugh*, 468 Pa. 618, 624–625, 364 A.2d 687, 690 (1976).

*Commonwealth v. Bryant*, 341 Pa.Super. ——, ——, 491 A.2d 181, 187 (1985).

To begin with, it is to be observed that section 1301 specifically requires "knowledge" on the part of the owner to hold him liable for permitting the unregistered vehicle on the road. Thus, this element of scienter is essential in establishing the owner's guilt. The question then arises:

Should there be any less of a requirement when it comes to proving "any person", not the owner, guilty of violating the statute? We think not, for the outgrowth thereof would have us applying two different standards of proof to establish violations of the same statute, e.g., if an "owner" is charged with violating section 1301, "knowledge" of non-registration of the vehicle driven would have to be proven by the prosecution. But, if "any other person" is charged with contravention of the identical statute, the trier of fact could, as was the case here, "assume" proof of the element of scienter on the part of the accused. We cannot attribute such an absurd result to the Legislature. 1 Pa.C.S.A. §§ 1921(a), 1922(1) & (2).

Such a practice, if condoned, would smack of unequal application of the law and raise serious constitutional questions. For example, the defendant would be required to come forward with evidence to rebut the presumption of "knowledge" read into the statute by the court below. If the accused does not take the stand in his own defense, then, as occurred here, the trial judge could "assume" his guilt and cause the verdict to be based "upon a presumption of guilt rather than proof beyond a reasonable doubt. *See* McCormick on Evidence, § 346 at 988 Point 2 (*Presumptions*) (3d ed. 1984)." *Commonwealth v. Bryant, supra,* 341 Pa.Super. at ——, 491 A.2d at 187.

Also, we note that the 1983 (amended) version of section 1301 places the burden of proving nonresidency, whenever it is asserted as a defense, upon the person charged under the section. The Act of July 22, 1983, P.L. 122, No. 32, § 2, imd. effective; 75 Pa.C.S.A. § 1301(b) (Supp.1984–85). This evidences a conscious choice on the part of the Legislature to shift the burden of proof from the prosecution to the accused in one particular instance. We find this departure from traditional practice reflective of the Legislature's determination that the prior practice, as applied to burdens of proof at trial, is to be retained unless legislated otherwise. *See Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). There being no indication by the legislative

body that the prosecution is to be relieved of its obligation in the other provisions of section 1301, either past or present, we see no reason to shift the acknowledged burden of proof from the Commonwealth to the defendant in a section 1301 case.

Since this Court's ruling in *Commonwealth v. Koch*, 288 Pa.Super. 290, 431 A.2d 1052 (1981), the full panoply of rights associated with the Rules of Criminal Procedure have been held to be henceforth applicable to summary cases. No less is this evident than in the requirement that one's guilt is to be established beyond a reasonable doubt, as compared to an assumption of wrongdoing. *Cf.* Pa.R. Crim.P. 63(b) (" * * * If the defendant pleads not guilty, the issuing authority shall try the case in the same manner as trials in criminal cases are conducted in the courts of common pleas when jury trial has been waived.").

The United States Supreme Court said it quite simply, when speaking of a juvenile's right to be adjudged by a "beyond a reasonable doubt" standard in *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970), in terms which are equally applicable here; namely:

... use of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned. It is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty.

Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

In the case at bar, it will be recalled that the appellant's girlfriend testified that she never communicated the fact of non-registration to the appellant prior to his use of her Chevette. Thus, if we were to apply the "assumption" standard of guilt to the instant section 1301 charge, then any citizen of this Commonwealth who borrows or uses the vehicle of another opens himself/herself up to a motor vehicle violation if inquiry is not made beforehand as to the status of the vehicle's registration. We believe that the Legislature did not intend such an absurd result. Therefore, in this Court's view, it would be a travesty of justice if we were to affirm the appellant's conviction for violating section 1301 on *no evidence* of scienter as to the non-registration of the vehicle he was seen driving.

Accordingly, judgment of sentence as to leaving the scene of an accident is affirmed; whereas, judgment of sentence for driving a non-registered vehicle is vacated.

LIPEZ, J., concurs in the result.