COMMONWEALTH of Pennsylvania

v.

Joyce L. SPONTARELLI, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 27, 2001.

Decided Feb. 13, 2002.

Joyce L. Spontarelli, appellant, pro se.

Holly B. Brent, Meadville, for appellee.

Before PELLEGRINI, Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

Opinion by Senior Judge FLAHERTY.

Joyce L. Spontarelli (Defendant) appeals *pro se* from the order of the Court of Common Pleas of Crawford County (trial court) finding her guilty of four summary violations of the City of Meadville Property Maintenance Code (Code). We affirm.

On June 8, 1999, Defendant was issued five citations for failing to maintain her premises and the exterior of her property in conformance with the Code. The District Justice found Defendant guilty of all charges. Defendant then appealed this matter to the trial court. On July 31, 2000, the trial court found Defendant guilty of four of the five citations: 1) permitting weed or plant growth in excess of 10 inches; 2) permitting the accumulation of rubbish or garbage on the premises;[1] and 3) parking, keeping or storing more than one currently unregistered, uninspected motor vehicle on the premises.

█ Defendant raises four issues on appeal to the Court which we shall address in the following order: whether the trial court erred by only punishing one of the property owners; next whether the verdict is supported by the evidence; next, whether Defendant was improperly denied appointed-counsel; finally, whether the citations were untimely.[2]

Defendant argues that her husband and co-owner of the property, James P. Spontarelli (Co-owner), should be equally responsible for Defendant's fines.[3] De-

1. Defendant was cited twice for permitting the accumulation of rubbish or garbage on the premises. *See* Citation Nos. A60537, A60540. The trial court found Defendant guilty of both offenses but concluded that the citations contained essentially the same allegations. Consequently, the trial court only assessed court costs for Citation No. A60537.

2. Where the trial court has received additional evidence in deciding whether there has been a summary violation of an ordinance, the Commonwealth Court's scope of review is limited to whether the trial court has abused its discretion or committed an error of law. *See David Aaron, Ltd. v. Borough of Jenkintown*, 63 Pa.Cmwlth. 577, 439 A.2d 1322, 1324 (1982).

3. The City Health and Codes Enforcement Officer for the City of Meadville testified that the city tax records reflect that Defendant's property was owned by James and Joyce Spontarelli. N.T. at 13. This testimony was not contested at the *de novo* hearing. The exact legal status of their ownership is not certain; however, Defendant refers to the property as "marital property". *See also Margarite v. Ewald*, 252 Pa.Super. 244, 381 A.2d 480, 482 (1977) ("[W]hen property, real or personal, is placed in the names of husband and wife without more, a tenancy by entireties is presumed to have been created, and in order to rebut that presumption there must be clear and convincing evidence to the contrary." (internal citations omitted)). Given our disposition of this issue, it is not necessary to remand the matter for a hearing to accept evidence on how the Spontarellis held their property.

fendant states that at various times she requested the trial court to hold Co-owner accountable:

On September 7, 2000, Defendant James P. Spontarelli appeared for a hearing before Common Pleas court on an unrelated case involving defendant's child. Defendant, Joyce Spontarelli, was never informed of the hearing, which the court had sufficient time to inform the mother [Defendant] by mail. Had the defendant been allowed to be present, she would have moved the court to hold defendant James P. Spontarelli accountable for his responsibilities relating to the property, thus defendant would not be facing punishment alone.

Defendant's Brief at 10.[4] We disagree that Co-owner was required to be part of the trial court proceedings. Section 301.2 of the Code places responsibility for the maintenance of the structures and exterior property on the *owner* of the premises. Section 302.1 defines an owner as "any person ... having a legal or equitable interest in the property". A spouse owning property in joint names is bound to have, at least, an equitable interest in it. Defendant is an owner with a legal or equitable interest in the property, so she alone may be cited for violating the Code.[5] Although the issue has been raised in this Court of whether individual criminal liability could attach to a joint owner of property for violation of a municipal ordinance, it has never been squarely decided.[6]

In *DeLoach, supra,* despite the fact that the owners of property claimed it was held as tenants by the entireties, each spouse was held absolutely individually criminally liable and the fines for multiple violations were upheld against both owners even though the violations were the result of the actions of the owners' tenant because landowners had sufficient knowledge of the conditions on their property which violated the ordinance. The defendants in *DeLoach* also argued before this Court that they could only be fined once for the violation because they owned the property as tenants by the entireties but, since they did not raise this issue before the trial court, it was waived. In the *dicta* following, however, this Court said that a tenancy by the entireties would not shield property owners from being held individually criminally liable and fined for each violation.

In *Glen Rock Borough v. Miller,* 720 A.2d 800 (Pa.Cmwlth.1998), a husband and wife co-owned property in an otherwise unidentified capacity. The borough fined the couple for zoning violations. When they failed to remedy the situation, the borough filed a civil complaint asking that the District Justice (DJ) impose a daily fine. The DJ entered a judgment against the husband and wife, individually. The husband appealed the judgment to the trial court and ruled the Borough to file a complaint but the Borough, after entering the DJ's judgments in common pleas court and giving notice to each party, filed a complaint with the trial court against the husband alone. The trial court entered judgment against the husband who did not appear or appeal. The wife, however, appealed over six months later. We held that the borough's actions in proceeding against the landowners contributed to confusing the wife owner to believe that her husband's appeal also included her appeal and remanded for a determination of the nature of the joint ownership to see if the wife was also an indispensable party.

---

**4.** In its 1925(a) statement, the trial court stated that Co-owner was not before the trial court on this matter so it could not hold Co-owner responsible.

**5.** *Commonwealth v. DeLoach,* 714 A.2d 483 (Pa.Cmwlth.1998).

**6.** *Id.*

*Glen Rock* distinguished *DeLoach* because there was no question of a due process denial in *DeLoach.* Mrs. DeLoach, just as Mrs. Spontarelli here, had an opportunity to be heard in a *de novo* hearing before the trial court, an opportunity which Mrs. Miller in *Glen Rock* was denied when her husband was the only one named in the complaint in the *de novo* hearing where he was found individually guilty of violating the Ordinance. Fines were imposed in *DeLoach* on husband and wife individually "[b]ecause criminal liability is not a shared concept."[7] In *Glen Rock,* however, when the borough failed to include the wife in the *de novo* hearing against the husband before the trial court, a question of due process was raised. The borough was held to have denied her an opportunity to be heard in her capacity as co-owner of the property. *Glen Rock* was concerned with whether the wife was an indispensable party, particularly since the property may have been held jointly rather than in common and remanded for a determination of the capacity in which the property was held.

*Glen Rock* is also distinguished from the instant case. Unlike the co-owner wife in *Glen Rock,* Mrs. Spontarelli, in the case at bar, was given notice and a hearing. Mr. Spontarelli, the co-owner who did not get notice or a hearing in the instant case, does not appeal, as Mrs. Miller did in *Glen Rock.* There is no question of a due pro-cess denial to Mrs. Spontarelli like there was in *Glen Rock.* Although we noted in *Glen Rock* "that it is the single property that was subject to violations, not the separate conduct of individuals," which contributed to the wife being confused by the borough's actions, the holding of property in joint names does not prevent the City in the case *sub judice* from proceeding against only one of the co-owners when the other co-owner does not object and/or appeal as Mrs. Miller did in *Glen Rock.*[8] The trial court correctly decided that although Mrs. Spontarelli complained that her husband was also at fault, that co-owner was not before the trial court in this matter.

 *Glen Rock* arose from civil proceedings when the civil complaint was filed.[9] *DeLoach* and the matter *sub judice,* however, arose from criminal proceedings based upon the alternative of imprisonment in default of the payment of fines being before the court. As with criminal matters, it is the individuals and not the res that are subject to prosecution. As we said in *DeLoach,* "[w]hen property is held by tenancy by the entireties, that does not mean a husband and wife are to be treated as a single entity for all matters regarding the property." *DeLoach,* 714 A.2d at 487. We do, therefore, hold that the joint owner of property may be individually criminally liable for violation of a municipal ordinance in a criminal procedure.

7. 714 A.2d at 487.

8. There is no issue in the present case concerning the rights of the husband co-owner if the City attempts to lien the jointly held property.

9. In *Glen Rock,* the notice of zoning violations from the Borough was not appealed to the Zoning Hearing Board. It is not indicated in the opinion if imprisonment in default of payment of fines was before the District Justice who only levied a fine without providing for imprisonment in default thereof, which order was appeal to the trial court. We note, however, that *Glen Rock* was decided after *Town of McCandless v. Bellisario,* 551 Pa. 83, 709 A.2d 379 (1998) in which the Supreme Court held that where a municipal ordinance provides for imprisonment either upon conviction or failure to pay a fine or penalty, then the Rules of *Criminal* Procedure must be used. Since the Commonwealth Court concluded in *Glen Rock* that the Borough failed to join an indispensable party pursuant to Rules of *Civil* Procedure, we can deduce that the municipal ordinance in *Glen Rock* did not contain the threat of imprisonment.

■ Defendant also challenges the sufficiency of the evidence of her conviction. In summary offense cases, the Commonwealth is required to establish that one's guilt is beyond a reasonable doubt. *See Commonwealth v. Karl*, 340 Pa.Super. 493, 490 A.2d 887, 890 (1985). We must, therefore, view all of the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth. *Commonwealth v. Jackson*, 506 Pa. 469, 472–73, 485 A.2d 1102, 1103 (1984). The test of sufficiency of evidence is whether the trial court, as trier of fact, could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt. *Id.*

At trial, the Commonwealth called the Code Enforcement Officer (CEO) to testify that on June 8, 1999 he visited Defendant's property. N.T. at 22–23. The CEO testified that the grass was in excess of two feet high and rose above his knees. *Id.* at 24. He also observed that there was a pile of rubbish consisting of bicycle parts, metal racks, possibly furnace ductwork, a propane cylinder and other material that was not identifiable. *Id.* at 25. The bulk of this pile was roughly fifteen feet wide, ten feet long and two to three feet high. The CEO also opined that the rubbish created an unsanitary condition. *Id.* In addition, he testified that at least five unregistered and uninspected vehicles were on the property.[10] *Id.* at 23–24.

■ Defendant asserts that there is a lack of substantial evidence to prove the true length of the grass. Apparently, Defendant believes that the Commonwealth has the burden of proving the exact height of the grass. We disagree. The Commonwealth's burden was to prove that the height of the grass exceeded ten inches. The fact the CEO also testified that the grass "varied in height from anywhere from ten or fifteen inches to a couple of feet" does not demonstrate that the Commonwealth failed to meet its burden. N.T. at 43.

■ Defendant also contends the CEO did not provide a true representation of her property. Specifically, Defendant suggests the CEO gave inconsistent statements about whether there was more than one vehicle on the property. We disagree. Defendant relied on the CEO's testimony that a vehicle was difficult to see in a photograph to demonstrate an inconsistency. The CEO testified, however, that the photograph is more of a depiction of the grass and weeds than of the vehicle; high grass and weeds obscured the visibility of the vehicle. N.T. at 28–29. Defendant also objected during the CEO's testimony because one of the vehicles in the photographs was allegedly on another property. The trial court admitted the photograph and instructed Defendant to address the matter on cross-examination. Defendant failed to do so.

■ The purported inconsistencies are not for this Court to resolve. We must defer to the trial court's acceptance of the CEO's testimony about the unregistered and uninspected vehicles. It is the trial court, as the trier of fact passing upon the credibility of witnesses and the weight to be afforded the evidence produced, which is free to believe all, part or none of the evidence. *Commonwealth v. Griscavage*, 512 Pa. 540, 543, 517 A.2d 1256, 1257 (1986), (quoting *Commonwealth v. Harper*, 485 Pa. 572, 576–77, 403 A.2d 536, 538–39 (1979)). Accordingly, we conclude that the

10. The Commonwealth proffered, and the trial court admitted, eleven photographs depicting the condition of Defendant's property. The CEO testified that the photographs were a fair and accurate depiction of the property in June 1999.

Commonwealth produced sufficient evidence to establish Defendant's guilt beyond a reasonable doubt and to support Defendant's conviction.[11]

■■■ The next issue is whether Defendant's request for appointed-counsel was improperly denied because she faced the possibility of incarceration. The trial court denied the request for two reasons. First, Defendant's financial situation did not warrant appointment of counsel. Second, the trial court did not believe that appointed-counsel was necessary when imprisonment is possible only upon default of payment on a fine. The applicable section of the Code states:

> Any person who shall violate a provision of this Code or who shall fail to comply with any of the requirements thereof, or who shall fail to comply with an order issued by the Code Official, shall, upon conviction in a summary proceeding, be sentenced to pay a fine of not more than $1,000.00 plus costs, *and in default of payment, shall be sentenced to imprisonment for not more than thirty days.*

Section 106.2 of the Code (emphasis added). Pursuant to the Pennsylvania Rules of Criminal Procedure, "counsel shall be assigned in all summary cases to all defendants who are without financial resources or who are otherwise unable to employ counsel when there is a likelihood that imprisonment will be imposed."[12] Pa. R.Crim.P. No. 316(a) *renumbered* Rule 122(A) and *amended* effective April 1, 2001. In *DeLoach,* we held that a procedure pursuant to a municipal ordinance violation is governed by the Rules of Criminal Procedure where the ordinance permits imprisonment upon default of the payment of the fine. *See also Town of McCandless v. Bellisario,* 551 Pa. 83, 709 A.2d 379 (1998). Therefore, Rule 316(a) was applicable to the summary proceedings in the matter *sub judice.*

The trial court, however, did inquire on the record about Defendant's financial situation. The trial court found that Defendant's previous year's income was $5,280 and she owned three unencumbered properties in Crawford County and two in Florida. Defendant indicated the assessed value of the properties was $10,000. Based on Defendant's financial condition, the trial court concluded that Defendant would not be entitled to counsel. We conclude the trial court's error concerning the applicability of Rule 316(a) was harmless because Defendant was found to have the financial resources to employ counsel.

Defendant's final issue is whether the citations were timely.[13] Defendant contends the CEO received complaints about the property in September 1997 and he waited too long to cite Defendant. Apparently, Defendant believes that the statute of limitations for prosecution of the zoning violations commenced when the CEO became aware that the property did not con-

11. Defendant commits one sentence in her brief toward the theory that the two rubbish violations "essentially state the same content, therefore the citation should have been dismissed." Defendant's Brief at 6. Mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of this matter.

12. Defendant argued before the trial court that she should receive appointed-counsel because of the possibility of imprisonment and her financial status. Defendant, however, does not argue on appeal that she was without the financial resources to hire legal counsel.

13. Defendant also alludes to a civil suit between Defendant and the City of Meadville. We cannot consider whether the Commonwealth is adding "more fuel to the fire" by filing citations because, aside from Defendant's unsubstantiated allegation, there is no evidence in the record concerning the civil suit.

form to the Code. We disagree. Regardless of the fact that the citations indicate that Defendant failed to maintain her property as of June 8, 1999, the Commonwealth's prosecution was timely. A prosecution for this offense must be commenced within two years after the offense is committed. *See* 42 Pa.C.S. § 5552(a). If the CEO was aware of the condition of Defendant's property in September 1997, and he issued the citations on June 8, 1999, then the action commenced within two years.

The conviction of Defendant is affirmed.

## ORDER

AND NOW, this 13th day of February, 2002, the conviction of Joyce L. Spontarelli on July 31, 2000 by the Court of Common Pleas of Crawford County is affirmed.

Dissenting Opinion by Judge FRIEDMAN.

Judge FRIEDMAN dissenting.

I respectfully dissent. The majority holds that, because the proceedings in this case are criminal in nature, Joyce L. Spontarelli, co-owner of the property at 133 Columbia Avenue in the City of Meadville, may be "individually criminally liable" for summary violations of a municipal ordinance governing the maintenance of property. (Majority op. at 1257.) For the reasons that follow, I do not agree that the proceedings in this case are criminal in nature. Thus, I would reverse and dismiss as improper the summary criminal proceedings against Spontarelli.

The majority concludes that the proceedings here are criminal in nature because section 106.2 of the City of Meadville Property Maintenance Code (Code) requires that violators of the Code be sentenced to imprisonment upon default in the payment of their fines. (Majority op. at 1257 – 58.) However, as shown below, *requiring* imprisonment for nonpayment of a fine is unconstitutional and illegal. Thus,

the provision relied upon by the majority is null and void. *See City of Allentown v. MSG Associates, Inc.*, 747 A.2d 1275 (Pa. Cmwlth.2000) (declaring an ordinance unconstitutional and, thus, null and void), *appeal dismissed,* 565 Pa. 174, 772 A.2d 413 (2001).

### I. Section 106.2 of the Code

The exact wording of section 106.2 of the Code (emphasis added) is as follows:

> Any person who shall violate a provision of this Code or who shall fail to comply with any of the requirements thereof, or who shall fail to comply with an order issued by the Code Official, shall, upon conviction in a summary proceeding, be sentenced to pay a fine of not more than $1000.00 plus costs, and *in default of payment,* **shall** *be sentenced to imprisonment* for not more than thirty days. Each day that a violation continues shall be deemed a separate violation.

The offending language in this provision is the word "shall." Under this provision, upon default in the payment of a fine, a person "shall" be sentenced to imprisonment. By definition, the word "shall" is mandatory; in ordinary usage, the word "shall" means "must" and is inconsistent with a concept of discretion. *See Cranberry Park Associates v. Cranberry Township Zoning Hearing Board,* 561 Pa. 456, 751 A.2d 165 (2000).

However, the U.S. Supreme Court has held that it is unconstitutional to impose a fine and then, upon nonpayment of the fine, automatically impose a sentence of imprisonment. *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971). The Supreme Court explained that, under such provisions in the law, indigent defendants would *always* be sentenced to prison for nonpayment of the fine while persons with the ability to pay the fine would be

able to avoid a sentence of imprisonment.[1] *Id.* The Supreme Court suggested that states amend their laws and procedures to avoid imprisoning an indigent defendant for involuntary nonpayment of a fine. *Id.*

In Pennsylvania, our supreme court has adopted Rule 456 of the Pennsylvania Rules of Criminal Procedure to govern summary cases. The rule states:

(B) If a defendant defaults on the payment of fines or costs, or restitution, as ordered, the issuing authority *shall notify the defendant* in person or by first class mail that, unless within 10 days of the date on the default notice, the defendant pays the amount due as ordered, or appears before the issuing authority to show cause why the defendant should not be imprisoned for nonpayment as provided by law, a warrant for the defendant's arrest may be issued.

(C) If the defendant appears pursuant to the 10 day notice in paragraph (B) or following an arrest for failing to respond to the 10 day notice in paragraph (B), the issuing authority *shall conduct a hearing to determine whether the defendant is financially able to pay as ordered.*

(1) Upon a determination that the defendant is financially able to pay as ordered, the issuing authority may impose any sanction provided by law.

(2) Upon a determination that the defendant is financially unable to pay as ordered, the issuing authority may order a schedule or reschedule for installment payments, or alter or amend the order as otherwise provided by law.

Pa. R.Crim. P. 456. In addition, the Pennsylvania legislature has enacted section 9730(b) of the Sentencing Code, 42 Pa.C.S.

§ 9730(b) (emphasis added), which provides:

(1) If a defendant defaults in the payment of a fine, court costs or restitution after imposition of sentence, the issuing authority ... may conduct a hearing to determine whether the defendant is financially able to pay.

(2) If the issuing authority ... determines that the defendant is financially able to pay the fine or costs, the issuing authority ... *may turn the delinquent account over to a private collection agency or impose imprisonment for nonpayment,* as provided by law.

(3) If the issuing authority ... determines that the defendant is without the financial means to pay the fine or costs immediately or in a single remittance, the issuing authority ... may provide for *payment in installments.* In determining the appropriate installments, the issuing authority ... shall consider the defendant's financial resources ... and the nature of the burden the payment will impose on the defendant. If the defendant is in default of a payment or advises the issuing authority ... that default is imminent, the issuing authority ... may schedule a rehearing on the payment schedule. At the rehearing the defendant has the burden of proving changes of financial condition such that the defendant is without the means to meet the payment schedule. The issuing authority ... may extend or accelerate the schedule, leave it unaltered *or sentence the defendant to a period of community service* as the issuing authority ... finds to be just and practicable under the circumstances.[2]

In other words, in Pennsylvania, a defendant "shall *not*" be sentenced automati-

---

**1.** The Supreme Court stated that this violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. *Tate.*

**2.** The policy underlying section 9730(b) seems to be that collecting the fine is preferable to imposing a sentence of imprisonment for de-

fault in the payment of a fine. Indeed, the U.S. Supreme Court has noted that "imprisonment, rather than aiding collection of the revenue [the fine], saddles the State with the cost of feeding and housing [the defendant] for the period of his imprisonment." *Tate,* 401 U.S. at 399, 91 S.Ct. 668. Thus, where a

cally to imprisonment upon default in the payment of a fine. The issuing authority must provide the defendant with proper notice and a hearing on the defendant's ability to pay the fine. If the issuing authority determines that a defendant is unable to pay the fine, the issuing authority may *never* sentence the defendant to imprisonment. Instead, the issuing authority must establish a suitable payment schedule, or, if that fails, sentence the defendant to community service. Thus, to the extent that section 106.2 of the Code *requires* that an issuing authority sentence a defendant to imprisonment upon default in the payment of a fine, it is null and void.

## II. Type of Proceeding

Proceedings to adjudicate municipal ordinance violations are civil in nature. *Commonwealth v. DeLoach,* 714 A.2d 483 (Pa.Cmwlth.1998).

> While the enforcement of municipal ordinances *that provide for imprisonment upon conviction or failure to pay a fine or penalty* must follow the Rules of Criminal Procedure, the same is not true for municipal ordinances *that do not provide for imprisonment upon conviction or failure to pay a fine or penalty,* which, by definition, are not Penal Laws, and are therefore not included in the definition of "criminal proceedings." Pa. R.Crim. P. [103]. The higher degree of protection provided by the Rules of Criminal Procedure does not apply to municipal ordinance enforcement actions where imprisonment is not a remedy for a conviction or failure to pay a fine.

*Town of McCandless v. Bellisario,* 551 Pa. 83, 87, 709 A.2d 379, 381 (1998) (emphasis in original). Where a municipal ordinance

provides for issuance of a fine upon conviction and does *not* provide for imprisonment upon conviction or failure to pay a fine, the proper procedure for enforcement of the ordinance is for the municipality to file a civil complaint alleging a violation of the ordinance. *Id.*

Here, inasmuch as the provision of the Code requiring imprisonment upon default in the payment of a fine is null and void, there is no valid provision in the Code for imprisonment upon conviction or failure to pay a fine. Therefore, the proceedings in this case are civil in nature. Of course, this means that the City of Meadville's initiation of summary criminal proceedings against Spontarelli by the issuance of citations was improper. Rather, the City of Meadville was required to file a civil complaint against Spontarelli alleging violations of the Code. Because the proceedings commenced by the City of Meadville in this case were improper, I would dismiss them.[3]

---

defendant is able to pay the fine, section 9730 permits the use of a private collection agency before imposition of a sentence of imprisonment. Where the defendant is unable to pay the fine, section 9730 provides for a payment schedule and, if that fails, a sentence of community service.

**3.** Based on my disposition of this issue, it is not necessary to address the remaining issues raised by Spontarelli in her brief.