# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania       :
                                   :
                v.                 :     No. 1938 C.D. 2016
                                   :     Submitted: May 5, 2017
Alvin S. Kanofsky,                 :
                    Appellant      :


**BEFORE:    HONORABLE P. KEVIN BROBSON, Judge**
**            HONORABLE JULIA K. HEARTHWAY, Judge**
**            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge**


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED:  August 14, 2017**


Appellant Alvin S. Kanofsky (Kanofsky), *pro se*, appeals from sixteen orders of the Court of Common Pleas of Northampton County (trial court), dated August 24, 2016.  Following a *de novo* hearing, the trial court found Kanofsky guilty of thirty-one summary criminal charges for violations of certain provisions of the International Property Maintenance Code (2009 ed.) (IPMC) and the Pennsylvania Uniform Construction Code (UCC),[1] both of which have been made part of the Codified Ordinances of the City of Bethlehem, Pennsylvania (Ordinance).[2]  For the reasons set forth below, we affirm the trial court's orders.

---

[1] 34 Pa. Code §§ 401.1-405.42.

[2] Article 1733 of the Ordinance adopted the IPMC with certain additions, deletions, and modifications as noted therein.  Article 1701 of the Ordinance adopted the UCC with certain additions, deletions, and modifications as noted therein.

Kanofsky is the owner of commercial property located at 30 East Third Street (Property) in the City of Bethlehem (City). In February 2016, Craig B. Hynes (Hynes), the City's chief code official, issued thirty-one citations to Kanofsky, sixteen for failure to obtain a certificate of occupancy for the Property in violation of Section 403.46 of the UCC[3] and fifteen for failure to repair the Property's leaking roof in violation of Section 304.7 of the IPMC.[4] On April 5, 2016, after holding a summary trial, a Magisterial District Judge (MDJ) found Kanofsky guilty of all thirty-one violations, fined Kanofsky in the amount of $29,700, plus costs, and sentenced him to a period of imprisonment.

Kanofsky appealed the MDJ's determinations to the trial court. The trial court held a *de novo* hearing on August 24, 2016. At the hearing, the City[5] presented the testimony of Hynes. Hynes explained that these proceedings are just

[3] Section 403.46 of the UCC provides, in relevant part: "(a) A building, structure or facility may not be used or occupied without a certificate of occupancy issued by a building code official."

[4] Section 304.7 of the IPMC provides: "Roofs and drainage. The roof and flashing shall be sound, tight and not have defects that admit rain. Roof drainage shall be adequate to prevent dampness or *deterioration* in the walls or interior portion of the structure. Roof drains, gutters and downspouts shall be maintained in good repair and free from obstructions. Roof water shall not be discharged in a manner that creates a public nuisance." (Emphasis in original.)

On each of February 4-5, 8, 10-12, 16-19, and 22-26, 2016, Hynes issued two citations to Kanofsky, one for failure to obtain a certificate of occupancy for the Property in violation of Section 403.46 of the UCC and another for failure to repair the Property's leaking roof in violation of Section 304.7 of the IPMC. On February 9, 2016, Hynes issued a citation to Kanofsky for failure to obtain a certificate of occupancy in violation of Section 403.46 of the UCC.

[5] The City assumed responsibility for the prosecution of the violations of its Ordinance on behalf of the Commonwealth of Pennsylvania (Commonwealth). All references to the City shall also be considered references to the Commonwealth.

another step in a lengthy process involving uncorrected violations at the Property. (Reproduced Record (R.R.) at 30-31.) Hynes stated that the City first informed Kanofsky about the subject violations in 2014. (*Id.* at 30-31.) Approximately two years later, after Kanofsky was given an opportunity to cure the violations, Hynes issued citations to Kanofsky and the parties appeared before a magisterial district judge. (*Id.* at 33, 35-36.) During those proceedings, the parties agreed to a timeline for the completion of certain repairs to the Property. (*Id.* at 33, 36.) When the parties returned to the magisterial district judge, the majority of the repairs had not been completed. (*Id.* at 33, 36.) The magisterial district judge found Kanofsky guilty, and Hynes informed Kanofsky that he would begin issuing daily citations for the violations. (*Id.* at 30, 33, 36.) Subsequent thereto, in February 2016, Hynes visited the Property on sixteen different dates and cited Kanofsky on each of those dates for failure to obtain a certificate of occupancy in violation of Section 403.46 of the UCC and for failure to repair the Property's leaking roof in violation of Section 304.7 of the IPMC. (*Id.* at 33-35; Certified Record (C.R.), Ex. C-8.)

Hynes testified further that the Property is in a substantially deteriorated condition; the building's roof has partially collapsed and water is leaking into the adjacent structure. (R.R. at 31, 35.) Hynes explained that on the third floor of the building one of the roof trusses has failed, the roof has collapsed in certain places, light is entering the building through the collapsed roof, ceiling material, insulation, and the failed truss litter the floor, and mold is growing on the walls. (*Id.* at 31.) Hynes also explained that water has entered the second floor of the building, causing a portion of the ceiling to deteriorate and fall, the wood floor to buckle, and a floor joist to deteriorate. (*Id.* at 31-32.) Hynes indicated that the

3

Property's leaking roof has persisted since 2007. (*Id.* at 32.) At that time, in order to prevent the water from destroying the building, Kanofsky had placed thirty-gallon trash barrels on the third floor to collect the water entering through the roof and then had pumped the water into the drainage or sanitary system using two small pumps. (*Id.*)

Hynes also testified that as of the date of the hearing, none of the Property's roof defects had been repaired. (*Id.* at 43.) When asked whether the Property's current condition presents a danger to the public, Hynes stated that if the roof is not repaired, the entire building could collapse. (*Id.* at 35.) He explained that a heavy rain or snow could cause the roof to fail, and, if the roof fails, the walls could fall, the floors could pancake, and the entire building could collapse. (*Id.*) Hynes also stated that as a result of water pouring into the building on the south wall, the stucco has buckled, cracked, and separated approximately fourteen to eighteen inches away from the building and is in imminent danger of falling onto an adjacent, vacant property. (*Id.*) Hynes testified further that Kanofsky is also storing materials inside the building located on the Property. (*Id.*) Hynes explained that the storage of these items at the Property requires a certificate of occupancy, which Kanofsky does not have and has never had during the sixteen years that Hynes has been employed by the City. (*Id.* at 32-33, 43.)

Kanofsky, who was acting *pro se*, made a statement at the hearing on his own behalf. Kanofsky stated that he had used the Property in prior years as a flea market, for a drama club, and for a music club, and that at those times, he had a certificate of occupancy for the Property. (*Id.* at 44-45.) Kanofsky stated further that at some point later, he decided to close the flea market and use the Property to store his research and personal items. (*Id.* at 45.) Kanofsky claimed that the City

4

knew that he was using the Property for this purpose and had permitted it. (*Id.*) Nevertheless, Kanofsky admitted to the trial court that he did not have a certificate of occupancy for the Property. (*Id.* at 44.) Kanofsky also acknowledged receiving notices from the City in 2014, regarding violations at the Property. (*Id.* at 45.) Kanofsky claimed that he began to address these violations and had obtained estimates for the required work, but the contractors could not work on the exterior of the building during the winter months. (*Id.*) Nonetheless, on cross-examination, Kanofsky admitted that since the time that he had been notified of the violations at the Property, spring, summer, and fall of 2015, and spring and summer of 2016 had passed, and no work had been performed to correct the roof defects. (*Id.* at 46-47.) Kanofsky further admitted that since he had been found to have violated the Ordinance and had been convicted on previous citations, he had not done anything to correct the roof defects or obtain a certificate of occupancy for the Property. (*Id.* at 47.)

At the conclusion of the hearing, the trial court found Kanofsky guilty of all charges, fined him in the amount of $29,700, plus court costs, and sentenced him to five days of imprisonment.[6] Kanofsky then appealed to this Court.[7]

---

[6] The trial court imposed the following fines against Kanofsky: (1) a $200 fine plus costs for Kanofsky's February 4, 2016 offense of failure to obtain a certificate of occupancy in violation of Section 403.46 of the UCC; (2) a $1,000 fine plus costs for each of Kanofsky's February 4-5, 8, 10-12, 16-19, and 22-26, 2016 offenses of failure to repair the Property's leaking roof in violation of Section 304.7 of the IPMC; (3) a $500 fine plus costs for Kanofsky's February 5, 2016 offense of failure to obtain a certificate of occupancy in violation of Section 403.46 of the UCC; and (4) a $1,000 fine plus costs for each of Kanofsky's February 8-12, 16-19, and 22-26, 2016 offenses for failure to obtain a certificate of occupancy in violation of Section 403.46 of the UCC.

At the conclusion of the August 24, 2016 hearing, the trial court also found Kanofsky guilty of another violation of Section 304.7 of the IPMC and fined Kanofsky in the amount of **(Footnote continued on next page…)**

5

On appeal,[8] Kanofsky appears to argue that the summary convictions should be overturned because he was not responsible for the condition of and damage to the Property and he had permission to store his personal items at the Property.[9] In response, the City argues that the trial court properly convicted Kanofsky of violating Section 304.7 of the IPMC and Section 403.46 of the UCC because the evidence supporting such convictions was overwhelming.

In *Commonwealth v. Spontarelli*, 791 A.2d 1254 (Pa. Cmwlth. 2002), we previously noted that "[i]n summary offense cases, the Commonwealth is required to establish" guilt beyond a reasonable doubt. *Spontarelli*, 791 A.2d at 1258. This Court views "all of the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth." *Id.* "The test of sufficiency of evidence is whether the trial court, as trier of fact, could have found that each element of the offenses charged

---

**(continued…)**

$1,000, plus court costs at docket number SA-150-2016. Kanofsky appealed that conviction, and his appeal is currently pending before this Court at docket number 1955 C.D. 2016.

[7] Kanofsky initially filed his appeal with the Pennsylvania Superior Court. By order dated October 11, 2016, the Superior Court transferred the matter to this Court, as this Court has exclusive jurisdiction over the matter pursuant to Section 762(a)(4) of the Judicial Code, 42 Pa. C.S. § 762(a)(4).

[8] In reviewing a summary conviction matter, where the trial court has taken additional evidence in *de novo* review, our standard of review is limited to considering whether the trial court abused its discretion or committed an error of law. *Commonwealth v. Spontarelli*, 791 A.2d 1254, 1255 n.2 (Pa. Cmwlth. 2002).

[9] In the "Questions Asked" section of his brief, Kanofsky identifies fourteen issues for consideration by this Court on appeal. The majority of Kanofsky's issues, however, involve matters that are irrelevant and in no way relate to this appeal and/or have no basis in the record. As a result, such issues are not properly before this Court and will not be addressed in this opinion.

was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Id.* "As a reviewing court, this Court may not reweigh the evidence and substitute our judgment for that of the fact-finder." *Commonwealth v. Hoffman*, 938 A.2d 1157, 1160 n.10 (Pa. Cmwlth. 2007). "[M]atters of credibility and evidentiary weight are within the exclusive discretion of the fact-finder below . . . ." *Carr v. State Bd. of Pharmacy*, 409 A.2d 941, 944 (Pa. Cmwlth. 1980). "[T]he fact-finder is free to believe all, part or none of the evidence presented." *Hoffman*, 938 A.2d at 1160 n.10.

Here, the trial court found Kanofsky guilty of sixteen summary criminal offenses for failure to obtain a certificate of occupancy for the Property in violation of Section 403.46 of the UCC and fifteen summary criminal offenses for failure to repair the Property's leaking roof in violation of Section 304.7 of the IPMC. Although the trial court did not set forth its credibility determinations in writing,[10] we can infer that the trial court found Hynes's testimony to be credible and Kanofsky's testimony to be not credible. Hynes's credible testimony supports the trial court's conclusions in this matter.[11] By arguing that the summary convictions should be overturned because he was not responsible for the condition of and damage to the Property and he had permission to store his personal items at the Property, Kanofsky is essentially asking this Court to adopt his preferred version of events and, in so doing, to reweigh the evidence and make different

---

[10] In its 1925(a) opinion, the trial court indicated that it was relying on the record and that no further statement was necessary. (Trial Ct. Op., dated Sept. 29, 2016.)

[11] Our review of the record further reveals that the trial court rejected some of the testimony and documents upon which Kanofsky attempts to rely in support of his arguments as irrelevant upon the City's objection.

7

credibility determinations. This we cannot and will not do. *See Hoffman*, 938 A.2d at 1160 n.10.

Accordingly, we affirm the trial court's orders.

_____
P. KEVIN BROBSON, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Commonwealth of Pennsylvania     :
    :
            v.                :     No. 1938 C.D. 2016
    :
Alvin S. Kanofsky,              :
                Appellant     :

## O R D E R

AND NOW, this 14th day of August, 2017, the orders of the Court of Common Pleas of Northampton County are hereby AFFIRMED.

 

 

_____
P. KEVIN BROBSON, Judge