# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Williamsport | : | |
| Bureau of Codes | : | |
| | : | |
| v. | : | No. 655 C.D. 2016 |
| | : | Submitted: March 3, 2017 |
| John DeRaffele, | : | |
| Appellant | : | |

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE JOSEPH M. COSGROVE, Judge

OPINION BY JUDGE BROBSON                    FILED:  September 6, 2017

John DeRaffele (DeRaffele) appeals, *pro se*, from an order of the Court of Common Pleas of Lycoming County (trial court).  Following *de novo* hearings, the trial court determined that DeRaffele had violated Section 108.5 of the 2015 International Property Maintenance Code (2015 Maintenance Code), as purportedly adopted by the City of Williamsport (Williamsport).  The trial court ordered DeRaffele to pay the costs of the prosecution and a fine previously imposed by a Magisterial District Judge.  We now reverse the order of the trial court.[1]

_____

[1] Additionally, Williamsport moves this Court to quash DeRaffele's brief and reproduced record or, in the alternative, to dispose of the appeal without reaching the merits.  Williamsport contends that DeRaffele improperly attached material to his brief and reproduced record and failed to cite any legal authority.  We deny the application to quash.  The issues are sufficiently presented for our judicial review, and we do not rely on any of the improperly attached material.

For purposes of the instant appeal, the following facts are not disputed. On July 23, 2015, the Williamsport Bureau of Codes received an anonymous complaint regarding the residence at 814 Hepburn Street (the Residence) in Williamsport, Pennsylvania. According to the complaint, a woman and her children were living at the Residence without any working utilities. The anonymous source further indicated that the children were "going outside to go to the bathroom." (Reproduced Record (R.R.) at 132a.)

Bureau of Codes Enforcement Officer Thomas Evansky (Evansky) investigated the Residence on July 27, 2015, and observed that the Residence had water but no electricity. Evansky posted notice onto the Residence, reflecting its condemnation and that any "person who removes the placard or occupies these premises shall be liable, if convicted, to the penalties provided by the law." (Trial Ct. Op. at 1.) Evansky also mailed a notice of condemnation to DeRaffele. (Supplemental Reproduced Record (Supp. R.R.) at 14b-15b.) The mailed notice cited DeRaffele for violation of Section 108.1.3 of the 2015 Maintenance Code, and provided the following under a "REQUIRED ACTION" portion of the notice:

> 108.1.3 Structure Unfit for Human Use and Occupancy. A structure is unfit for human occupancy whenever the code official finds that such structure is unsafe, unlawful or, because of the degree to which the structure is in disrepair or lacks maintenance, is unsanitary, vermin or rat infested, contains filth and contamination, or lacks ventilation, illumination, sanitary or heating facilities or other essential equipment required by this code, or because the location of the structure constitutes a hazard to the occupants of the structure or to the public.
>
> 814- NO ELECTRICITY - STRUCTURE TO REMAIN UNOCCUPIED UNTIL ALL PROPERTY AND A SATISFACTORY INSPECTION HAS BEEN COMPLETED BY THE BUREAU OF CODES.

2

(*Id.*)    The notice mailed to DeRaffele also indicated that the "DATE REQUIRED," or deadline for compliance, was July 27, 2015, the same day that Evansky investigated the Residence.[2]

The next day, on July 28, 2015, DeRaffele's tenant restored the electricity at the Residence. Robert Setzler (Setzler), on behalf of DeRaffele, called the Bureau of Codes to notify the Bureau of the change. Setzler called Evansky, who did not answer, so Setzler left Evansky a message. Additionally, Setzler spoke with Ed Kiessling (Kiessling) at the Bureau of Codes and notified him that the tenant restored the electricity.

Evansky returned to the Residence on September 18, 2015, not to re-inspect the premises but because "there was a complaint that the owner [(DeRaffele)] has allowed occupancy." (R.R. at 137a.) Evansky noticed that the electricity was on and that the placard had been removed. Evansky also noticed that new tenants occupied the Residence and, after obtaining a copy of the new tenants' lease, learned that the new tenants began their tenancy on September 1, 2015. Evansky cited DeRaffele for permitting tenants to occupy a condemned and placarded structure in violation of Section 108.5 of the Maintenance Code, which provides:

> 108.5 Prohibited occupancy. Any occupied structure condemned and placarded by the code official shall be vacated as ordered by the code official. Any person who shall occupy a placarded premises or shall operate placarded equipment, and any owner, owner's authorized agent or person responsible for the premises who shall let

---

[2] The notice mailed to DeRaffele is dated July 23, 2015 (the date of the original complaint), although it appears that the notice should have been dated July 27, 2015 (the date that Evansky first investigated the Residence and condemned it). (Trial Ct. Op. at 2.)

anyone occupy a placarded premises or operate placarded equipment shall be liable for the penalties provided by this code.

(Emphasis omitted.)

On November 30, 2015, a Magisterial District Judge convicted DeRaffele of a violation of Section 108.5 of the Maintenance Code. DeRaffele appealed to the trial court, which conducted evidentiary hearings. DeRaffele took the position that he cured the condemnation because his tenant restored electricity approximately 12 hours after the condemnation took place. Additionally, he argued that Williamsport never properly adopted the 2015 Maintenance Code. The testimony relevant to the instant appeal is reflected in the factual background above. Also relevant is Evansky's testimony on cross-examination, acknowledging that electricity was restored at the Residence on July 28, 2015. Evansky also testified that he had in fact received a message from Setzler, on behalf of DeRaffele, but he could not recall if he responded. Setzler testified that neither he nor DeRaffele's previous maintenance worker removed the placard. Finally, the trial court sustained a hearsay objection regarding Setzler's testimony that Kiessling informed Setzler that if the electricity was restored, the condemnation would be lifted.

On April 8, 2016, the trial court denied DeRaffele's appeal from his summary conviction by the Magisterial District Judge. The trial court ordered DeRaffele to pay the costs of the prosecution and the fine imposed by a Magisterial District Judge.

After DeRaffele filed a notice of appeal, however, the trial court changed course. In accordance with Pennsylvania Rule of Appellate

4

Procedure 1925(a),[3] the trial court issued an opinion effectively requesting reversal of its order: "After review of the record for this appeal and upon further reflection, the [trial] court is convinced that it erred in convicting [DeRaffele]." (Trial Ct. Op. at 9-10.) The trial court further noted "that it erred in sustaining the objection and striking the testimony" from Setzler about his telephone conversation with Kiessling. (*Id.* at 9-10, n.3.) The trial court seems to have determined that DeRaffele did not knowingly violate Section 108.5 of the Maintenance Code because the Residence was not placarded when the new tenants began their tenancy and the person who removed the placard was unknown. The trial court remarked:

> The [trial] court is not criticizing either party. The [trial] court does not think that Mr. Evansky was trying to give [DeRaffele] a hard time or that Appellant and his representatives were intentionally disregarding or violating the condemnation notice. The situation was more of a break down [sic] in communications.

(*Id.* at 11.)

On appeal to this Court, although inartfully stated, it appears that DeRaffele is challenging whether sufficient evidence existed to support his conviction, particularly where the trial court opines that it erred. He also appears to raise challenges relating to the adoption of the Maintenance Code by

---

[3] Pa. R.A.P 1925(a) provides, in pertinent part:

Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

5

Williamsport. Finally, DeRaffele alleges that Williamsport violated his Fourteenth Amendment due process rights by failing to provide him notice and an adequate time to cure the condemnation. In response, Williamsport argues that the trial court lacked jurisdiction to substantially change its order by way of its Rule 1925(a) opinion, because the 30-day period for reconsideration had passed. Williamsport further argues that the challenges to the validity of the Maintenance Code and allegations of due process violations are meritless.

In reviewing a summary conviction, where the trial court has taken additional evidence in *de novo* review, our standard of review is limited to considering whether the trial court abused its discretion or committed an error of law. *Commonwealth v. Spontarelli*, 791 A.2d 1254, 1255 n.2 (Pa. Cmwlth. 2002). In *Spontarelli*, we noted that "[i]n summary offense cases, the Commonwealth is required to establish" guilt beyond a reasonable doubt. *Id.* at 1258. In reviewing a conviction, therefore, this Court views all of the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth. *Id.* The test of sufficiency of the evidence is whether the trial court, as trier of fact, could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt. *Id.*

As a threshold matter, we must first determine whether Williamsport is even able to charge DeRaffele with a violation of the 2015 version of the Maintenance Code. DeRaffele argues that Williamsport never adopted the 2015 Maintenance Code. The parties appear to agree that in April 2004, Williamsport adopted the 2003 International Property Maintenance Code (2003 Maintenance Code), created by the International Code Council.

6

(Supp. R.R. at 16b-20b.) Williamsport argues that it is able to charge DeRaffele under the 2015 Maintenance Code because its adoption of the 2003 Maintenance Code also encompassed all subsequent changes to the code. In support of this argument, Williamsport specifically cites to Section 11018.13 of the Third Class City Code, 11 Pa. C.S. § 11018.13, which provides:

> **(a) Authority to enact.--**In the same manner as other ordinances, and except as otherwise provided in this chapter or the Pennsylvania Construction Code Act, council may enact, by reference to a standard or nationally recognized code, all or a portion of the standard or nationally recognized code as an ordinance of the city. Three copies of the proposed standard or nationally recognized code, portion of the code or amendment to the code shall be filed in the office of the city clerk at least 10 days before council considers the proposed ordinance. Upon enactment, a copy shall be kept with the ordinance book and available for public use, inspection and examination.
>
> **(b) Time frame.--**
>
> (1) Except as otherwise provided by the Pennsylvania Construction Code Act and regulations adopted pursuant to the act, an ordinance adopting, by reference, a standard or nationally recognized code shall be enacted within 60 days after introduction and *shall encompass subsequent changes in the code unless otherwise specified in the ordinance*.
>
> (2) *An ordinance which incorporates standard or nationally recognized code amendments by reference shall become effective after the same procedure and in the same manner as is specified in this section for original adoption of the code*.

(Emphasis added.)

The trial court appears to have focused on the language in Section 11018.13(b)(1) of the Third Class City Code, specifically that the

7

ordinance "shall encompass subsequent changes in the code unless otherwise specified in the ordinance." The trial court determined that the ordinance did not "specify otherwise" and that it actually authorized the prospective adoption of subsequent versions of the Maintenance Code. (Trial Ct. Op. at 6.) Thus, the trial court agreed with Williamsport that Section 11018.13 permits Williamsport to adopt by reference subsequent versions of an ordinance that entails a standard code.

We disagree. Section 11018.13 of the Third Class City Code authorizes a city to adopt an ordinance that incorporates a standard or nationally recognized code by reference. In other words, the ordinance itself does not need to provide the entire text of the code it references. Williamsport exercised its authority to adopt by reference a standardized code when it adopted the 2003 Maintenance Code in April 2004. (Supp. R.R. at 16b-20b.) Contrary to Williamsport's assertion, however, Section 11018.13 does not allow cities to adopt entirely new ordinances, or provisions thereof, sight unseen. Instead, Section 11018.13 dictates that changes to a third class city's code that are made *prior to the adoption of the code* are incorporated into the ordinance. For example, if there were any amendments to the 2003 Maintenance Code that were made after the 2003 version was drafted but before April 2004, when Williamsport adopted it, those amendments would be incorporated into Williamsport's ordinance. That is a far cry from empowering Williamsport to adopt, in 2004, yet-to-be-written versions of the Maintenance Code, created years or decades later. This point is bolstered by Section 11018.13(b)(2)'s language that "an ordinance which incorporates standard or nationally recognized code *amendments*" must undergo the "same procedure as . . . the original adoption of the code." 11 Pa. C.S.

8

§ 11018.13(b)(2) (emphasis added). Williamsport simply did not have the authority to adopt the 2015 Maintenance Code eleven years before it was written.[4]

Moreover, were we to construe Section 11018.13 of the Third Class City Code as Williamsport would have us read it, we would invariably face a constitutional problem under the non-delegation doctrine. In *Protz v. Workers' Compensation Appeal Board*, 161 A.3d 827 (Pa. 2017), our Supreme Court held that the General Assembly unconstitutionally delegated its legislative authority in Section 306(a.2) of the Workers' Compensation Act,[5] which required a physician to determine a claimant's degree of impairment by applying the methodology set forth in the *most recent version* of a guide issued by the American Medical Association (AMA). The Supreme Court held that granting the AMA such unrestrained power violated Article II, Section 1 of the Pennsylvania Constitution, which vests legislative power in the General Assembly. *Id.*

Likewise, in the instant matter, Williamsport would have us interpret Section 11018.13 of the Third Class City Code in a manner that would effectively grant the International Code Council unfettered authority to create a new controlling Maintenance Code for the residents of Williamsport. We decline to do so. We acknowledge that the issue of delegation is made slightly more

---

[4] Both Williamsport and the trial court address Williamsport's purported authority under Section 11018.13 of the Third Class City Code, which became effective on March 19, 2014. We note that even if we were to analyze Williamsport's purported authority under the version of former Section 1014 of the Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. § 36014, repealed by the Act of March 19, 2014, P.L. 52, that was operative in 2004 when Williamsport adopted the 2003 Maintenance Code, there is still no authority to adopt prospectively new versions of a standard code.

[5] Act of June 2, 1915, P.L. 736, added by the Act of June 24, 1996, P.L. 350.

9

complicated here because the General Assembly has already delegated authority to local governments like Williamsport to enact property maintenance codes. *See* 11 Pa. C.S. § 141A04(a) ("Notwithstanding the primacy of the Uniform Construction Code, a city may enact a property maintenance ordinance, including a standard or nationally recognized property maintenance code or a change or variation"). Williamsport's reading of Section 11018.13, however, results in the delegation of legislative authority, originating in the General Assembly, passing through local governments, and ending in the hands of the International Code Council. The General Assembly cannot grant local governments more authority than the General Assembly possesses. Such a scheme is analogous to the legislative delegation that the Supreme Court addressed in *Protz* and, therefore, cannot pass constitutional muster.

For the reasons set forth above, we conclude that Williamsport never adopted the 2015 Maintenance Code and, thus, cannot charge DeRaffele with a violation of the 2015 Maintenance Code.[6] Accordingly, we reverse the decision of the trial court.

_____
P. KEVIN BROBSON, Judge

---

[6] Because we have determined that Williamsport never adopted the 2015 Maintenance Code, we need not address the remaining arguments regarding DeRaffele's summary conviction.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Williamsport         :
Bureau of Codes            :
                              :
         v.              :    No. 655 C.D. 2016
                              :
John DeRaffele,            :
               Appellant    :

## O R D E R

AND NOW, this 6th day of September, 2017, Appellee City of Williamsport Bureau of Codes' application to quash appellant's brief and reproduced record, or, in the alternative to dispose of the appeal without reaching the merits, is DENIED, and the order of the Court of Common Pleas of Lycoming County is REVERSED.

_____
P. KEVIN BROBSON, Judge