# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Washington Health Systems : 
Greene, formerly known as : 
Essent Healthcare Waynesburg, : 
                Petitioner : 
                 : 
          v. : No. 689 C.D. 2016
                 : Submitted: September 16, 2016
Unemployment Compensation : 
Board of Review, : 
             Respondent : 

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE JULIA K. HEARTHWAY, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE BROBSON                FILED: November 21, 2016

Petitioner Washington Health Systems Greene (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board reversed the decision of a Referee, thereby granting unemployment compensation benefits to Christopher J. D'Antonio (Claimant). For the reasons set forth below, we affirm.

Claimant filed for unemployment compensation benefits on November 8, 2015, after being discharged from employment as an emergency department registered nurse at Southwest Regional Medical Center in Waynesburg, formerly known as Essence Healthcare Waynesburg. The Lancaster UC Service Center (Service Center) issued a notice of determination finding Claimant eligible for unemployment compensation benefits. (Certified Record (C.R.), Item No. 5.)

Employer appealed, and a Referee conducted an evidentiary hearing. Five employees testified for Employer. Kim Daley (Daley), Employer's Senior Human Resources Partner, testified first and explained Employer's policies set forth in the Employee Handbook, Employer's Code of Conduct, Discipline Policies and Procedures, specifically the policy on disruptive behavior, Reflections of Service Excellence, and Comprehensive Crisis Management Training. (Reproduced Record (R.R.) at 8a-12a.) She testified that Employer's policies (1) prohibited disrespectful or unprofessional behavior, including use of profanity, against staff, patients, visitors, or volunteers, as well as any activity that leads to disrupting or jeopardizing the care of patients; and (2) required employees to notify their supervisor and Employer's Department of Human Resources of any threats, harassment, or aggressive or disruptive behavior. (*Id.*) Daley also testified that she gathered reports following a confrontation between Claimant and a patient's companion on October 26, 2015. (*Id.* at 14a.) She testified that the confrontation caused the patient to leave the hospital and seek treatment at another hospital. (*Id.*)

Employer's registration clerk Michelle Little (Little) testified that Claimant brought the patient and her companion back to a treating room that was not visible to Little. (*Id.*) While Little did not actually see the confrontation, she did overhear parts of it. (*Id.*) She heard two loud noises "that sounded like something hit the wall." (*Id.*) Little did not hear the patient's companion say anything, but she did hear Claimant using profanity. (*Id.*) Moments later, the companion left the treating area and as he was leaving the hospital, he asked Little to note that Claimant pushed him against the wall. (*Id.*)

Next to testify for Employer was Justin Santoro (Santoro), a registered nurse in the emergency department. Santoro testified that Claimant brought the

2

patient and her companion back to the treating area. (*Id.* at 31a.) Santoro prepared an IV while another nurse, Janet Lowe (Lowe), began taking the patient's vitals. (*Id.*) The companion became upset that Santoro was in the room while the patient, a female, was changing into a hospital gown. (*Id.*) Claimant asked Santoro to leave the room, which he did, until a doctor arrived and informed the companion that Santoro needed to be in the room to treat the patient. (*Id.*) Santoro returned to his treatment of the patient when he heard the confrontation. (*Id.*) The doctor instructed the companion to wait in the waiting room. (*Id.*) Santoro testified that Claimant loudly asked the companion, "Are you threatening me?" (*Id.*) Santoro testified that he then heard "loud bangs" and an argument. (*Id.*) He tried to calm the patient, but she removed the tourniquet from her arm and said that she was leaving. (*Id.*) Santoro did not recall Claimant using any profanity. (*Id.*) Santoro testified that the patient left in an "emergent situation." (*Id.*)

Fourth to testify for Employer was Lowe, another emergency room nurse who cared for the female patient. She testified that the patient was experiencing vaginal bleeding and was upset about a potential miscarriage. (*Id.* at 39a.) Lowe testified that after the doctor and Santoro entered the treatment room, she heard the confrontation. (*Id.*) She heard Claimant shouting at the companion, but she did not hear the companion shouting. (*Id.*) Lowe did not remember hearing any profanity, but she did hear Claimant tell the companion that Claimant was going to call security and the police. (*Id.* at 39a-40a.) Lowe also testified that she and Claimant had two work-related arguments prior to October 26, 2015. (*Id.* at 40a-41a.)

The last witness to testify for Employer was Bridgett Trump (Trump), Claimant's immediate supervisor. Trump testified that she, along with Daley and

3

Marty Farstner, the Director of Human Resources, took part in the decision to discharge Claimant. (*Id.* at 47a.) Trump testified that Claimant was discharged for conduct detrimental to a patient's care and use of profanity. (*Id.* at 48a.)

Claimant was the final witness to testify at the Referee's evidentiary hearing. Claimant testified that when the doctor arrived and was in the treating room with nurses Santoro and Lowe and the patient, Claimant was immediately outside the treating room gathering information and recording it on a computer. (*Id.* at 53a.) He described the patient's male companion as pacing outside the treating room and repeating that he wanted nurse Santoro out of the room. (*Id.*) Claimant testified that the companion threatened to "knock his teeth in" and made an additional threat that he did not understand. (*Id.* at 53a-54a.) Claimant testified that the companion and he were "chest to chest" and that the companion "was in [his] face and yelling and such." (*Id.* at 53a.) Claimant testified that he threatened to call hospital security and he had to speak loudly to speak over the patient's companion. (*Id.* at 59a.) He testified that he did not use any profanity with the patient's companion. (*Id.* at 54a.) He also stated that he knew of the policy to notify his supervisor and the Department of Human Resources of any threats, but he did not do so until after the companion left the hospital. (*Id.* at 57a.)

Following the evidentiary hearing, the Referee issued a decision, reversing the Service Center's determination, thereby determining Claimant to be ineligible for benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law).[1] Specifically, the Referee concluded that Claimant's

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

4

failure to comply with Employer's policy for its staff to present themselves in a professional manner and treat patients and guests with respect rose to the level of willful misconduct. (C.R., Item No. 10.)

Claimant then appealed to the Board, which reversed. (C.R., Item No. 16.) In so doing, the Board issued its own findings of fact and conclusions of law. The Board made the following findings:

1. Essent Health Systems Greene employed the claimant through November 4, 2015, finally as a full-time emergency department registered nurse earning $28.31 per hour.

2. The claimant knew that the employer's policies required him to be respectful and professional at all times and prohibited disruption of patient care.

3. Around 3:15 a.m. on October 26, 2015, a pregnant woman suffering vaginal bleeding entered the [Emergency Department] waiting area with a male companion.

4. The claimant took the patient to a female exam room, where a female RN and male emergency technician began to treat the patient.

5. The claimant remained with the companion outside the room, door ajar, and asked questions of all involved to complete the triage process.

6. The companion became agitated and objected to males being in the room while the patient changed, so the tech left at the claimant's direction.

7. A female doctor approached the companion and explained the tech needed to help.

8. The companion calmed and permitted the tech to enter the exam room.

5

9. The companion again became agitated, began to argue with the claimant, and insisted the patient exit the room.

10. The claimant again asked the tech to leave, but the doctor insisted he stay, so the claimant asked the companion to wait in the waiting room.

11. The companion remained in the doorway as the claimant continued to ask questions for the triage process.

12. The companion leaned over to the claimant and whispered in his ear that he would knock the claimant's teeth in.

13. The claimant spoke over the companion and told him to go to the waiting room before he called security.

14. The claimant did not use profanity or push the companion.

15. The companion exited the facility, followed by the patient five minutes later.

16. Following an investigation, the employer discharged the claimant for violating its policies by yelling at the companion.

(*Id.*)

The Board concluded that, based on the record, Claimant was eligible for unemployment compensation benefits. (*Id.*) The Board reasoned that Employer discharged Claimant for yelling at the companion, violating Employer's policies requiring him to be respectful and professional at all times, and prohibiting disruption of patient care. (*Id.*) The Board further reasoned:

> The four firsthand witnesses' testimonies were mostly consistent. Some testified the claimant used profanity, but others did not. The referee did not find the claimant

6

used profanity, presumably crediting the claimant's testimony, and the Board agrees. Most witnesses agreed both men's voices were raised, so the Board credits the claimant's testimony that he needed to talk over the companion, not that he was unnecessarily yelling. Considering the witnesses' focuses on the patient and other matters, their distance from the claimant and the companion, and the whispered nature of the threat, the Board does not find the lack of corroboration of the threat to harm the claimant's credibility that it occurred.

Because of the patient's emergency situation, the claimant's active participation in screening her for care, and his proximity to the companion, the Board does not find the claimant acted unreasonably by failing to immediately notify his supervisor of the threat, as the employer's policy technically required.

The record is clear that it was the companion, not the claimant, who acted unreasonably and disrupted the patient's care. Based on the entire record, the Board cannot conclude that the claimant's actions violated the employer's policy, but instead concludes that the claimant's actions were reasonable under the circumstances.

(*Id.*)

On appeal,[2] Employer argues that the Board's findings of fact numbers 9, 10, 12, 13, and 16 are not supported by substantial evidence. Employer alleges that the Board erred in concluding that Claimant did not violate the hospital's policies. Employer also argues that the Board erred as a matter of law in concluding that Claimant's actions were reasonable and, thus, did not constitute

---

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

willful misconduct. Finally, Employer contends that the Board erred as a matter of law by crediting the testimony of Claimant over conflicting testimony and evidence in the record.[3] In response, the Board argues that its factual findings are supported by substantial evidence. The Board further argues that based on its findings of fact, Claimant is eligible for benefits because he did not violate Employer's policies and acted reasonably under the circumstances.[4]

Substantial evidence is relevant evidence that a reasonable mind might consider adequate to support a conclusion. *Hercules, Inc. v. Unemployment Comp. Bd. of Review*, 604 A.2d 1159, 1161 (Pa. Cmwlth. 1992). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party,

---

[3] Employer's first and third arguments, challenging the factual findings and credibility determination, are duplicative arguments in that credibility informs factual findings. Despite Employer's contention that failure to weigh credibility in its favor is an error of law, it is actually a factual determination within the authority of the Board. *See Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1386 (Pa. 1985); *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004).

[4] Claimant, by counsel, intervened in this appeal and filed a brief separate from the Board. Claimant's brief is devoid of any citation to legal authority. Claimant has failed to adequately develop these issues in his brief as required by Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure, which provides:

> The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, *followed by such discussion and citation of authorities* as are deemed pertinent.

Pa. R.A.P. 2119(a) (emphasis added). This Court has held that "[m]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter." *Commonwealth v. Spontarelli*, 791 A.2d 1254, 1259 n.11 (Pa. Cmwlth. 2002). To the extent that Claimant raises any additional arguments not addressed by the Board, we decline to address them.

8

giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record taken as a whole contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984). "The fact that [the employee] may have produced witnesses who gave a different version of the events, or that [the employee] might view the testimony differently than the Board is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1107 (Pa. Cmwlth. 1994). Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

Moreover, in an unemployment case the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1386 (Pa. 1985). The Board is also empowered to resolve conflicts in the evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004).

First, Employer challenges finding of fact number 9, stating that the "companion became agitated" and "insisted the patient leave the room." Employer argues that the companion's demeanor was calm, not agitated, and that he did not request the *patient* leave the room, seemingly implying that it was *Santoro* that the

9

companion requested to leave the room. The companion's behavior and demeanor was described by Employer's witnesses and Claimant. The Board is free to weigh Claimant's testimony that the companion became agitated as credible, and we are not permitted to re-examine that determination on appeal. With respect to who the companion tried to have leave the room, Claimant also testified that the companion was pacing and stated "I want her out of the room," presumably referring to the patient.[5] (R.R. at 53a.) Finding of fact number 9, therefore, is supported by substantial evidence.

Employer's second argument against the Board's factual findings is a matter of word choice rather than an actual contradiction of the findings. Employer argues that Claimant "ordered" the companion to leave, rather than "asked" him to leave, which is contrary to the language used in finding of fact number 10. Employer argues that rather than merely speaking over the companion, as found in finding of fact number 13, Claimant was "to the point of screaming" at him. Finally, within this argument, Employer contends that Claimant was not fired for yelling at the companion, as found in finding of fact number 16, but instead for aggressive, loud, disruptive, shouting behavior. This line of argument is meritless. *Peak* instructs that the Board is permitted to resolve all conflicts in evidence. *Peak*, 501 A.2d at 1386. The Board has the authority to resolve factual discrepancies and assess which characterization, between "ordering" and "asking" or "yelling" and "shouting," are most appropriate. As such, those findings are supported by substantial evidence.

---

[5] Moreover, Employer failed to develop any argument as to how the alleged difference in the companion's request—that either the patient or Santoro leave the room—impacted the Board's ultimate conclusion.

Employer also challenges finding of fact number 12 that the patient's companion threatened Claimant. This finding is reconcilable with all evidence in the record. Claimant testified that the companion threatened him by saying that he was going to "knock [Claimant's] teeth in." The companion did not testify at the evidentiary hearing. Not one of Employer's witnesses contradicted that assertion. Multiple witnesses did testify that Claimant asked, "Are you threatening me?" Such a reaction provides further support for the alleged threat. Ultimately, the Board had to weigh the credibility of Claimant's testimony describing the threat. The Board credited Claimant's testimony, and we are prohibited from re-weighing that determination. This factual finding is supported by substantial evidence.

Finally, Employer contests finding of fact number 14, which found that Claimant did not use profanity. Employer argues that this finding is not supported by substantial evidence because Employer's registration clerk, Little, testified that she heard Claimant use profanity. Claimant, testifying for himself, denied using profanity. This discrepancy thus becomes a matter of weight and credibility. The Board remains the final arbiter of a witness' credibility, and the Board's decision to believe one witness over another is conclusive. *E.T. Sys. Corp. v. Unemployment Comp. Bd. of Review*, 504 A.2d 992, 994 (Pa. Cmwlth. 1986). Here, the Board agreed with the Referee's finding that Claimant did not use profanity. Both the Referee and the Board credited the testimony of Claimant over Ms. Little. We conclude, therefore, that the Board's finding is supported by substantial evidence.

We next address Employer's third argument, which is related to its first. Employer argues that the Board erred *as a matter of law* by crediting the testimony of Claimant based upon contradictory evidence. Employer argues that

the record actually supports a different conclusion—*i.e.*, that Claimant was not credible given his contradictory testimony. Employer's argument demonstrates a misunderstanding of this Court's standard of review. "Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." *Peak*, 501 A.2d at 1388. Thus, Employer's argument is without merit.

Finally, we consider whether the Board erred as a matter of law in concluding that Claimant did not engage in willful misconduct. Section 402(e) of the Law provides, in part, that an employee shall be ineligible for compensation for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." The term "willful misconduct" is not defined by statute. The courts, however, have defined "willful misconduct" as:

> (a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003).

The burden of proving willful misconduct rests with the employer. *Guthrie v. Unemployment Comp. Bd. of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). Where an employer seeks to prove willful misconduct by showing that the claimant violated the employer's rules or policies, the employer must demonstrate (1) the existence of the rule or policy and (2) that the claimant violated it. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). Moreover, the employer must establish that the claimant's actions

12

were intentional or deliberate. *Tongel v. Unemployment Comp. Bd. of Review*, 501 A.2d 716, 717 (Pa. Cmwlth. 1985).

Once the employer meets its burden, the burden shifts to the claimant to show good cause for his refusal to comply with the rule or policy. *Great Valley Publ'g. v. Unemployment Comp. Bd. of Review*, 136 A.3d 532, 536 (Pa. Cmwlth. 2016). A claimant has good cause if his actions are reasonable and justifiable under the circumstances. *Docherty v. Unemployment Comp. Bd. of Review*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006). Whether an employee's conduct constitutes willful misconduct and whether a claimant has proved good cause are questions of law subject to our review. *Dep't of Corr. v. Unemployment Comp. Bd. of Review*, 943 A.2d 1011, 1015-16 (Pa. Cmwlth. 2008).

Thus, we now consider whether Claimant engaged in willful misconduct by violating Employer's policies, and, if so, whether he had good cause for doing so. The Board determined that Claimant did not violate Employer's policy to be respectful and professional at all times and not disrupt patient care, because the Board found that the patient's companion threatened Claimant, and Claimant did not respond by using profanity or pushing the companion. Rather, the Claimant spoke over the companion to instruct him to wait in the waiting area. The Board further found that the patient's companion was acting unreasonably and disrupting the patient's care. As to Employer's policy requiring employees to report threats, which Employer appears to suggest requires an employee to report threats *immediately*, the Board found that although Claimant did not strictly adhere to the policy, he acted reasonably under the circumstances. Claimant was participating in the emergency treatment of a patient at the time he was threatened by the companion. The Board observed that Claimant was actively

13

participating in screening for the patient's care, and we agree that Claimant could not abandon his role in the patient's emergency treatment as the volatile situation developed.

Based upon the Board's determinations that (1) Claimant did not violate Employer's policy to be respectful and professional at all times and not disrupt patient care and (2) Claimant acted with good cause to the extent that he failed to comply with the "immediacy" aspect of Employer's notification policy, the Board did not err in concluding that Claimant did not engage in willful misconduct.

Accordingly, we affirm the order of the Board.


_____
P. KEVIN BROBSON, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Washington Health Systems : 
Greene, formerly known as : 
Essent Healthcare Waynesburg, : 
                Petitioner : 
                 : 
           v. :   No. 689 C.D. 2016
                 : 
Unemployment Compensation : 
Board of Review, : 
          Respondent : 


# **O R D E R**


AND NOW, this 21st day of November, 2016, the order of the Unemployment Compensation Board of Review is AFFIRMED.


                             _____

                             P. KEVIN BROBSON, Judge