# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 1523 C.D. 2016 |
| | : | No. 1524 C.D. 2016 |
| Alvin S. Kanofsky, | : | No. 1525 C.D. 2016 |
| Appellant | : | Submitted: May 5, 2017 |

**BEFORE:** **HONORABLE P. KEVIN BROBSON, Judge**
**HONORABLE JULIA K. HEARTHWAY, Judge**
**HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge**

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON** **FILED: August 11, 2017**

In these consolidated appeals, Appellant Alvin S. Kanofsky (Kanofsky), *pro se*, appeals from three orders of the Court of Common Pleas of Northampton County (trial court), dated May 25, 2016. Following a *de novo* hearing, the trial court found Kanofsky guilty of four summary criminal charges for violations of certain provisions of the International Property Maintenance Code (2009 ed.) (IPMC) and the Pennsylvania Uniform Construction Code (UCC),[1] both of which have been made part of the Codified Ordinances of the City of Bethlehem, Pennsylvania (Ordinance).[2] For the reasons set forth below, we affirm the trial court's orders.

---

[1] 34 Pa. Code §§ 401.1-405.42.

[2] Article 1733 of the Ordinance adopted the IPMC with certain additions, deletions, and modifications as noted therein. Article 1701 of the Ordinance adopted the UCC with certain additions, deletions, and modifications as noted therein.

Kanofsky is the owner of commercial property located at 30 East Third Street (Property) in the City of Bethlehem (City). On September 17, 2015, Craig B. Hynes (Hynes), the City's chief code official, issued two citations to Kanofsky, one for failure to obtain a certificate of occupancy for the Property in violation of Section 403.46 of the UCC[3] and another for failure to correct violations related to the Property's exterior structure in violation of Section 304.1 of the IPMC.[4] Thereafter, on September 25, 2015, Hynes issued two more citations to Kanofsky, one for failure to make required repairs to loose and cracked materials on the Property's exterior structure in violation of Section 304.6 of the IPMC[5] and another for failure to obtain a certificate of occupancy for the Property in violation of Section 403.46 of the UCC. On February 3, 2016, after holding a summary trial, a Magisterial District Judge (MDJ) found Kanofsky guilty of all four violations of the Ordinance and assessed fines and costs against Kanofsky in the amount of $1,952.50.

---

[3] Section 403.46 of the UCC provides, in relevant part: "(a) A building, structure or facility may not be used or occupied without a certificate of occupancy issued by a building code official."

[4] Section 304.1 of the IPMC provides: "General. The exterior of a structure shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety or welfare." Section 304.1.1 of the IPMC sets forth specific conditions that are deemed unsafe and must be repaired or replaced. One of the unsafe conditions is: "[r]oofing or roofing components that have defects that admit rain, roof surfaces with inadequate drainage, or any portion of the roof framing that is not in good repair with signs of *deterioration*, fatigue or without proper anchorage and incapable of supporting all nominal loads and resisting all load effects." Section 304.1.1(8) of the IPMC (emphasis in original.)

[5] Section 304.6 of the IPMC provides: "Exterior Walls. All exterior walls shall be free from holes, breaks, and loose or rotting materials; and maintained weatherproof and properly surface coated where required to prevent *deterioration*." (Emphasis in original.)

Kanofsky appealed the MDJ's determinations to the trial court. The trial court held a *de novo* hearing on May 25, 2016. At the hearing, the City[6] presented the testimony of Lieutenant Benjamin Hackett (Lt. Hackett) of the City's police department. Lt. Hackett testified that on March 24, 2015, he and another police officer responded to the Property based on a report that an exterior door to the building located on the Property was open and that there were potential squatters located inside the building. (Reproduced Record (R.R.) at 21-22.) Lt. Hackett testified further that upon their arrival at the Property, he and the other police officer entered through the open door and searched the building to "clear" it of any unauthorized individuals and/or criminal behavior. (*Id.* at 22, 24.) During their search, Lt. Hackett made the following observations regarding the interior of the building: (1) the building was filled with a large amount of items/junk; (2) certain sections of the floor were missing, thereby exposing the floor beams/joists and leaving the ceiling from the floor below the only means of support; (3) some of the windows were missing; (4) the fourth/upper floor contained large trash vessels that were filled and overflowing with water; (5) water had been entering the building through the roof, causing the ceiling to deteriorate and litter the floor with debris; (6) the water overflowing from the trash vessels had caused damage to the floor; and (7) the building contained an extensive amount of mold. (*Id.* at 22.) Lt. Hackett explained that the interior of the building was basically falling apart. (*Id.*) Lt. Hackett testified that he also walked around the exterior/perimeter of the building (the three sides that were accessible). (*Id.* at 23.)

---

[6] The City assumed responsibility for the prosecution of the violations of its Ordinance on behalf of the Commonwealth of Pennsylvania (Commonwealth). All references to the City shall also be considered references to the Commonwealth.

As he did so, he observed broken pieces of brick located on the sidewalk below the south-facing wall and was concerned about whether it was even safe to stand under the wall. (*Id.*) Lt. Hackett testified further that he had prepared a police report detailing his observations about the Property and requested that it be forwarded to the building inspection department due to the safety issues that he had discovered. (*Id.* at 26.)

The City also presented the testimony of Hynes. Hynes testified that he had issued a citation to Kanofsky for violation of Section 304.1.1 of the IPMC as a result of Lt. Hackett's observations regarding the leaky roof that had been causing the building to deteriorate and fall into a state of disrepair. (*Id.* at 27, 29; Certified Record (C.R.), Ex. C-11B.) Hynes testified further that he had also performed an inspection of the Property in February 2014, which revealed, *inter alia*, deteriorating brick on the rear and courtyard sides of the building that needed to be pointed, as well as water bleeding through the exterior brick. (R.R. at 27.) Following that inspection, the City sent Kanofsky a letter dated February 25, 2014, advising him that he would be issued a citation, if he did not make certain corrections to the Property. (*Id.*; C.R., Ex. C-5.) Hynes explained that some of the issues identified in the February 25, 2014 letter, namely the deteriorating brick on the south-facing wall of the Property, were the same as those that resulted in the issuance of the citation to Kanofsky for violation of Section 304.6 of the IPMC.[7] (R.R. at 27, 29; C.R., Ex. C-11C.) More specifically, Hynes stated that the

_____

[7] Hynes admitted that Kanofsky had corrected some of the issues identified in the February 25, 2014 letter and that those issues were not part of the citations that are the subject of this case. (R.R. at 31.) In addition, the City's attorney conceded that the City was proceeding against Kanofsky for the defective condition of only the south-facing wall of the Property, not the courtyard wall. (*Id.* at 32.)

4

south-facing side of the building contained missing bricks, loose and deteriorating bricks, and severely deteriorating and loose mortar joints. (R.R. at 28.) Hynes also testified that in October 2015, at an initial hearing before the MDJ, the MDJ requested that Hynes create a timeline for Kanofsky to complete any repairs to the Property. (*Id.*) At that time, Hynes and Kanofsky agreed in writing that Kanofsky would have six months to repoint and repair the brick.[8] (*Id.* at 28-29; C.R., Ex. C-10.) Hynes testified that despite this agreement, Kanofsky did not repair and repoint the brick and the condition of the brick has probably become worse since that time. (R.R. at 29.)

Hynes testified further that he also issued two citations to Kanofsky for failure to have a certificate of occupancy for the Property in violation of Section 403.46 of the UCC. (*Id.*; C.R., Exs. C-11A and C-11D.) Hynes explained that when you look into the front windows of the building, you can see "a lot of material inside the building being stored." (R.R. at 30; C.R., Exs. C-4A through C-4F.) Hynes explained further that since May 23, 2016, when he took photographs of the front of the building, and September 2015, when he issued the citations, the materials have remained inside the building and have not been removed. (R.R. at 30.) Hynes testified that the storage of the items currently located at the Property requires a certificate of occupancy, which Kanofsky does not have and has never had during the sixteen years that Hynes has been employed by the City. (*Id.* at 30-31.)

---

[8] Hynes and Kanofsky also agreed that Kanofsky would have: (1) one month to complete any soffit and fascia repairs on the Adams Street side of the building; (2) three months to complete any repairs to the roof; and (3) four months to remove all materials that had been stored in the building. (C.R., Ex. C-10.)

Kanofsky, who was acting *pro se*, made a statement at the hearing on his own behalf. Kanofsky stated that from the time that he purchased the building until about ten years ago, he had been performing repairs and trying to maintain the building and that he had verbal permission to store items at the Property. (*Id.* at 33.) On cross-examination, Kanofsky admitted that he was the owner of the Property. (*Id.*) Kanofsky also admitted that in October 2015, when the case was before the MDJ, he had signed an agreement, wherein he agreed to repair the roof within three months, remove all materials from the Property within four months, and repair and repoint the brick within six months. (*Id.*) Kanofsky admitted further that he had obtained estimates, but that none of the work that he had agreed to perform had been completed and the items being stored in the building had not been removed. (*Id.*) Kanofsky explained that he had run into problems with the contractors because the work could not be performed in the cold weather. (*Id.*) Kanofsky also explained that it was his intention to remedy the issues "very quickly now that the warm weather [was] here." (*Id.*)

At the conclusion of the hearing, the trial court determined that the City had met its burden of proof with respect to Kanofsky's violations of the IPMC and the UCC. As a result, the trial court found Kanofsky guilty of all charges and fined Kanofsky in the amount of $1,400, plus the costs of prosecution.[9] Kanofsky

[9] The trial court imposed the following fines against Kanofsky: (1) a $400 fine plus costs for Kanofsky's first offense of failure to obtain a certificate of occupancy in violation of Section 403.46 of the UCC; (2) a $600 fine plus costs for Kanofsky's second offense of failure to obtain a certificate of occupancy in violation of Section 403.46 of the UCC; (3) a $200 fine plus costs for Kanofsky's failure to make required repairs to loose and cracked materials on the Property's exterior structure in violation of Section 304.6 of the IPMC; and (4) a $200 fine plus costs for Kanofsky's failure to correct violations related to the Property's exterior structure in violation of Section 304.1 of the IPMC.

then appealed to this Court,[10] and the trial court directed Kanofsky to file a statement of matters complained of on appeal. In its 1925(a) opinion,[11] the trial court concluded that Kanofsky's argument that it erred in its credibility determinations lacked merit because, as the fact-finder, it was free to believe or disbelieve the presented testimony. (Trial Ct. Op., Aug. 4, 2016, at 20-23.) The trial court concluded further that the believable testimony of Lt. Hackett and Hynes supported Kanofsky's summary convictions, such that the summary convictions did not "shock the conscience."[12] (Trial Ct. Op., Aug. 4, 2016, at 21-23.) In reaching these conclusions, the trial court stated:

> [Lt.] Hackett testified that: 1) the interior of the Property was filled with a large amount of items; 2) there was significant water damage to the interior of the Property; 3) the interior of the Property appeared unsafe; and 4) the exterior brick walls were crumbling onto the sidewalk below. Additionally, Hynes testified that: 1) the roof of the Property was leaking and deteriorating the interior of

---

[10] Kanofsky initially filed his appeals with the Pennsylvania Superior Court. By order dated July 28, 2016, the Superior Court transferred the matters to this Court as this Court has exclusive jurisdiction over the matters pursuant to Section 762(a)(4) of the Judicial Code, 42 Pa. C.S. § 762(a)(4).

[11] The trial court issued an initial 1925(a) opinion on July 25, 2016. In that opinion, the trial court recommended that Kanofsky's appeal be quashed because he failed to timely file a statement of errors complained of on appeal (1925(b) statement). On August 4, 2016, however, after receiving a copy of Kanofsky's 1925(b) statement from the clerk of the criminal division, the trial court issued a supplemental 1925(a) opinion, wherein the trial court addressed the merits of Kanofsky's arguments on appeal. All further references to the trial court's 1925(a) opinion will be to the supplemental 1925(a) opinion issued on August 4, 2016.

[12] The trial court also concluded: (1) Kanofsky failed to preserve certain issues for appellate review because such issues were difficult to discern from Kanofsky's 1925(b) statement and were merely narrative statements; and (2) more than half of Kanofsky's issues related to the trial court's alleged failure to consider evidence that Kanofsky did not present at the May 25, 2016 hearing.

7

the Property; 2) the bricks on the exterior of the south facing wall of the Property were deteriorating and crumbling; 3) vines were growing on the west side wall of the Property, but they did not cause the damage to the south facing wall of the Property; 4) Kanofsky had not remediated the exterior brick problem since it was first reported in February of 2014; 4) [sic] Kanofsky was storing items inside the Property; and 5) [sic] Kanofsky has not had a certificate of occupancy for the Property in the past sixteen years. Kanofsky also testified at trial and, to some extent, presented contradictory testimony. Specifically, he testified that he made some improvements to the Property following the February 2014 inspection. However, Kanofsky also testified that he did not comply with the October 2015 agreement to fix the exterior bricks, and acknowledged that he stored items in the Property.

As demonstrated in [*Commonwealth v.*] *Blackham*[, 909 A.2d 315 (Pa. Super. 2006), *appeal denied*, 919 A.2d 954 (Pa. 2007)], the finder-of-fact is free to believe or disbelieve both [Lt.] Hackett's and Hynes's testimony. Here, the [trial] court, rather than a jury, sat as the finder-of-fact. [The trial court] did not find that the testimony of either [Lt.] Hackett or Hynes was tenuous, vague, or uncertain. Instead, [the trial court] found that both [Lt.] Hackett and Hynes testified consistently, calmly, confidently, and presented logical and clear testimony. Contrary to Kanofsky's assertions, [the trial court] found that the testimony of [Lt.] Hackett and Hynes closely aligned, and supported the Commonwealth's version of events. Further, [the trial court] did not find any evidence that either [Lt.] Hackett or Hynes had a bias or motivation to testify untruthfully, and therefore, [the trial court] did not weigh bias in [its] credibility determination. Therefore, based upon their testimony, as well as their body language in court, [the trial court] determined that the testimony of [Lt.] Hackett and Hynes was credible.

Kanofsky, however, did not testify credibly. Kanofsky's statements at trial were often contradictory and illogical, and do not align with the errors he alleges on appeal. For instance, Kanofsky admits that he agreed

8

to fix the Property's exterior bricks during the winter of 2015, but alleges through his [c]oncise [s]tatement [of matters complained of on appeal] that it would have been impossible to fix the exterior bricks during the winter. Kanofsky did not offer any explanation as to why he agreed to fix the exterior bricks during this time period if he did not believe that it would be possible to do so. Further, while Kanofsky alleges that the [trial] court should have considered the damage the vines caused when weighing the evidence, Hynes's testimony, bolstered by the actual citations, prove Kanofsky's arguments to be irrelevant and illogical as the citations do not concern the wall where the vines are located. As a whole, Kanofsky's testimony appeared to be contrived and untruthful, as demonstrated by Kanofsky's body language and mannerisms as he testified at trial.

(Trial Ct. Op., Aug. 4, 2016, at 20-23 (citations omitted).)

On appeal,[13] Kanofsky appears to argue that the summary convictions should be overturned because he was not responsible for the condition of and damage to the Property and he had permission to store his personal items at the Property.[14] In response, the City argues that the trial court properly convicted Kanofsky of violating Sections 304.1 and 304.6 of the IPMC and Section 403.46 of the UCC because the evidence supporting such convictions was overwhelming.

---

[13] In reviewing a summary conviction matter, where the trial court has taken additional evidence in *de novo* review, our standard of review is limited to considering whether the trial court abused its discretion or committed an error of law. *Commonwealth v. Spontarelli*, 791 A.2d 1254, 1255 n.2 (Pa. Cmwlth. 2002).

[14] In the "Questions Asked" section of his brief, Kanofsky identifies fourteen issues for consideration by this Court on appeal. The majority of Kanofsky's issues, however, involve matters that are irrelevant and in no way relate to this appeal and/or have no basis in the record. As a result, such issues are not properly before this Court and will not be addressed in this opinion.

In *Commonwealth v. Spontarelli*, 791 A.2d 1254 (Pa. Cmwlth. 2002), we previously noted that "[i]n summary offense cases, the Commonwealth is required to establish" guilt beyond a reasonable doubt. *Spontarelli*, 791 A.2d at 1258. This Court views "all of the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth." *Id.* "The test of sufficiency of evidence is whether the trial court, as trier of fact, could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Id.* "As a reviewing court, this Court may not reweigh the evidence and substitute our judgment for that of the fact-finder." *Commonwealth v. Hoffman*, 938 A.2d 1157, 1160 n.10 (Pa. Cmwlth. 2007). "[M]atters of credibility and evidentiary weight are within the exclusive discretion of the fact-finder below . . . ." *Carr v. State Bd. of Pharmacy*, 409 A.2d 941, 944 (Pa. Cmwlth. 1980). "[T]he fact-finder is free to believe all, part or none of the evidence presented." *Hoffman*, 938 A.2d at 1160 n.10.

Here, the trial court concluded that the City had met its burden of proof and found Kanofsky guilty of two offenses of failure to obtain a certificate of occupancy in violation of Section 403.46 of the UCC, one offense of failure to make required repairs to loose and cracked materials on the Property's exterior structure in violation of Section 304.6 of the IPMC, and one offense of failure to correct violations related to the Property's exterior structure in violation of Section 304.1 of the IPMC. In reaching this conclusion, the trial court found Lt. Hackett's and Hynes's testimony to be credible and Kanofsky's testimony to be not credible. Lt. Hackett's and Hynes's credible testimony supports the trial court's conclusions in this matter. By arguing that the summary convictions

10

should be overturned because he was not responsible for the condition of and damage to the Property and he had permission to store his personal items at the Property, Kanofsky is essentially asking this Court to adopt his preferred version of events and, in so doing, to reweigh the evidence and make different credibility determinations. This we cannot and will not do. *See Hoffman*, 938 A.2d at 1160 n.10.

Accordingly, we affirm the trial court's orders.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania : 
 : 
v. : No. 1523 C.D. 2016
 : No. 1524 C.D. 2016
Alvin S. Kanofsky, : No. 1525 C.D. 2016
Appellant :

# **O R D E R**

AND NOW, this 11th day of August, 2017, the orders of the Court of Common Pleas of Northampton County are hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge