IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 1467 C.D. 2023 |
| | : | Submitted: July 7, 2025 |
| William J. Tataren, | : | |
| | : | |
| Appellant | : | |

BEFORE:  HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                                              FILED:  September 19, 2025

William J. Tataren (Appellant) appeals, *pro se*, from the September 1, 2023 Order of the Bucks County Court of Common Pleas (trial court).  The trial court imposed costs and fines for five property nuisance citations issued by Bristol Township (the Township) after denying Appellant's *de novo* summary appeal of the same.  Before this Court, Appellant reiterates his argument, *inter alia*, that the trial court erred by concluding that the Township bore its evidentiary burden.  We affirm.

## I. Background

Relevant now, Appellant owns real property at 603 Fifth Avenue, Croydon, Pennsylvania (the Property).  Since at least February 2022, the Township has taken issue with Appellant's care for the Property, leading to warnings relating to trash covered yards, accumulating junk, and an improperly parked inoperable

vehicle. In fact, these warnings culminated in the Township issuing citations to Appellant and eventually led to a summary appeal hearing before the trial court on September 15, 2022. *See* Trial Court's 1925(a) Opinion (Trial Court's Op.), 7/12/24, at 2 n.6. Appellant ultimately pleaded *nolo contendere* to the citations at issue and paid the resulting monetary penalties. *Id*.

Evidently, Appellant's violations of the Township's Code[1] did not abate, and on January 6, 2023, the Township's Code Enforcement Officer, Carla Helbling, surveyed the Property. Upon seeing no improvement to the Property, the Township served Appellant with a Notice of Violation (Notice) via certified mail and first-class mail on the very same day. In pertinent part,[2] the Township cited Appellant with the following violations of the Township's Code: (1) overgrowth of weeds and other undesirable vegetation, 134 Bristol Township Code §134-2(A); (2) littered or trash covered yard, *id*. §134-2(C); (3) unsightly accumulation of junk, *id*. §134-2(M); (4) storage of partially dismantled or inoperable vehicles, *id*. §134-2(N); and (5) unsightly building in disrepair, *id*. §134-2(D). The Magisterial District Court found Appellant guilty as to all five citations and Appellant filed an appeal in the trial court.

On September 1, 2023, the trial court held a *de novo* summary appeal hearing. The Township introduced photographs taken by Helbling during her January 6, 2023 survey of the Property as well as her accompanying testimony. When asked to describe the photographs, Helbling testified that she observed: "[An

---

[1] The Township's Code can be found online at: https://ecode360.com/BR1318 (last visited September 18, 2025).

[2] As the trial court explained, the Township withdrew a sixth citation at the opening of its summary appeal hearing. Trial Court's Op., 7/12/24, at 2; *see also* Trial Court's Hearing, N.T. at 4.

i]noperable motorcycle, building supplies, discarded building materials, trash cans filled with stuff, overgrowth of weeds, scrap metal, looks like some type of appliance in the back there. [An a]bundance of different items, it looks like [a] lawn mower is in there, some bicycles." Trial Court's Hearing, 9/1/23, Notes of Testimony (N.T.) at 10. Helbling also observed that a dismantled motorcycle or dirt bike with only one wheel was being stored on the property against a tree, and that Appellant was storing a cement mixer, propane tank, and other building materials on the Property. *Id*. Regarding the integrity of Appellant's home, Helbling described the structure as not being "weathertight" and further remarked that portions of the home were falling down – including the roof. *Id*. at 11. Helbling also described the severe overgrowth of vegetation on Appellant's property. *Id*. at 12. In further support of its citations, the Commonwealth also proffered photographs of the Property, taken on August 31, 2023, which Helbling testified indicated no change to the Property's condition since the January 6, 2023 survey. *Id*. at 14-16.

Appellant also testified, offering that any overgrown vegetation had crept on to his property from an adjoining lot; that his Property was not littered with junk, just his possessions; and that his home was weathertight and all structures on his Property were structurally sound. *See* Trial Court's Hearing, N.T. at 33-37. Appellant disagreed with Helbling's belief that the Property's condition had not improved. For example, Appellant noted that he had removed a backhoe from the Property. *Id*., N.T., at 38. Although the dismantled motorcycle remained on the Property, Appellant explained that the motorcycle belongs to a neighbor who has not removed it from the Property, despite assurances otherwise, because the neighbor is "afraid of having the same thing happen to him" – referring to the Township's citation of Appellant's Property. *Id*., N.T., at 39. At various times during his

3

testimony, Appellant expressed that some construction materials, including asphalt roofing tiles, remained unused on his Property, because, while he had initially purchased the materials to improve the condition of the Property, he feared that doing so would put his Property at risk of catching fire from bonfires and parties held in the neighboring "wetlands." *Id*., N.T. at 36, 39-41.

Ultimately, the trial court disagreed with counsel for Appellant's (Counsel) arguments – specifically those claiming that this "prosecution" violated double jeopardy and that the Township failed to carry its evidentiary burden. Thus, the trial court imposed costs and fees in the amount of $300.00 per violation ($1,500.00 total). Appellant filed the instant appeal shortly thereafter.[3]

In a Rule 1925(b) Statement of the Errors Complained of on Appeal, Appellant complained of the 11 following errors verbatim:

---

[3] Without belaboring this matter's tortured procedural history, we note that Appellant initially filed a *pro se* Notice of Appeal from the trial court's order in the Superior Court of Pennsylvania. In response, Counsel sought leave to withdraw his appearance in the trial court, which the trial court eventually granted on December 1, 2023.

In the interim, however, the trial court issued an order directing Appellant to file a Pa.R.A.P (Rule) 1925(b) statement. Despite granting an extension, the trial court never received Appellant's statement, prompting the trial court to file a Rule 1925(a) opinion on December 11, 2023, expressing its belief that Appellant had waived all issues on appeal. One week later, the Superior Court transferred the matter to this Court *sua sponte* along with an Application to Withdraw as Counsel (Application) which Counsel had filed therein. Superior Court 12/18/23 Order (*Per Curiam*). Upon review of our own docket, we observed, among other irregularities, that the confusion regarding Counsel's appearance in the trial court meant it was unclear that Appellant had received notice of the trial court's Rule 1925(b) order. We consequently remanded the matter to the trial court to allow Appellant to file an Application for Leave to File a Rule 1925(b) Statement *nunc pro tunc* within 21 days of our Order. *See* Commonwealth Court 3/25/24 Order (*Per Curiam*). However, the same problem persisted because we neglected to remove Counsel's appearance in this matter. We therefore granted Counsel's Application, removed Counsel as Appellant's counsel of record, and remanded to the trial court for the same purpose once more. *See* Commonwealth Court 5/3/24 Order (*Per Curiam*). The merits presented by this appeal are now finally before us.

4

1. Finding that you violated the zoning ordinance without sufficient evidence other than the Judge's personal feeling that the property looked "filthy" in the pictures introduced in court.

2. Finding that the lawyer for Bristol township had entered into evidence sufficient proof of violation of the zoning ordinances.

3. Refusal of the Judge to take into consideration that the length of vegetation growth was not actually measured, when the ordinance required a certain length in order for the ordinance to be applicable to your property.

4. Finding you guilty as a result of conditions on your property which were characterized as unpleasant or not pretty enough to allow you to maintain the property in that condition.

5. Not taking into consideration that you had attempted to make certain repairs to your home, and were then stopped from doing so by the township.

6. Not taking into consideration that the property adjacent to you on the westerly border of your property, was radically overgrown far beyond the condition of your property, and which grew over into your yard, thereby worsening the condition of your property and making you responsible for that growth emanating from the adjacent property.

7. Finding you guilty of violation of the ordinance for having certain person property being stored on your property in a reasonable manner without creation of any conditions which would be harmful to you or anyone else in the neighborhood.

8. Ignoring the fact that no neighbors of yours had made any complaint to the Township about your property.

9. Ignoring the absence of any proof that your property is a legal nuisance causing a reduction in real property values in your neighborhood.

5

10. Being found guilty of violation of the Bristol Township zoning ordinance which is unconstitutionally invalid to ambiguity in its descript of what constitutes violation of its ordinances in my case.

11. Pursuant to the 6th Amendment to the U.S. Constitution, I had the right to a public trial, and I believe the doors to the Courtroom were locked, because the courtroom was empty except for myself, the Judge, the attorney for Bristol Township, and court personnel as well as a Deputy sheriff or two.

O.R. at Item No. 8.

In its well-written Rule 1925(a) Opinion, the trial court rebutted Appellant's complaint that it predicated its decision on "personal feelings" or the judge's own aesthetic tastes. Trial Court's Op., 7/12/24, at 9. Rather, the trial court explained that its decision relied on the "overwhelming" evidence adduced through the Commonwealth's photographs of the Property, as well as Helbling's and Appellant's own testimony. *Id*. For substantially the same reasons, the trial court disagreed with Appellant's complaint that it disregarded Appellant's proffered mitigating evidence, such as his attempts to cure the conditions on his property. *Id*. at 10-11.

The trial court then addressed Appellant's assertion that the Township's Code is unconstitutionally vague. During the hearing, Counsel had taken issue with the Code's undefined use of the term "filthy," where other provisions of the Code had defined the nuisance at issue, like a "cesspool," for example. Trial Court's Op., 7/12/24, at 14-15. Given the term's common usage,[4] as well as the photographs

---

[4] *See Filthy*, *Merriam-Webster's*, https://www.merriam-webster.com/dictionary/filthy (last visited September 18, 2025) ("covered with, containing, or characterized by filth"); *Filth*, *id*., https://www.merriam-webster.com/dictionary/filth (last visited September 18, 2025) ("foul or putrid matter[;] especially: loathsome dirt or refuse").

6

attached to the Notice, the trial court opined that "a person of ordinary intelligence should have a reasonable opportunity to know what conduct is prohibited by the [Code] and to take action to cure the defect." *Id*. at 15.[5]

## II. Issues

Appellant presents the following issues for our review: (1) whether the Township adhered to the service requirements in its own Code; (2) whether *res judicata* or double jeopardy barred the prosecution of Appellant for the same offenses as the 2022 prosecution; (3) "whether the trial court made appropriate findings or issues of law"; and (4) whether the trial court's decision is supported by sufficient evidence. For the reasons discussed below, we conclude that Appellant has waived the first three issues for appellate review. We agree with the trial court in all other respects.

---

[5] The remainder of the trial court's 1925(a) opinion explained that some of Appellant's complaints related to the citation which the Township had withdrawn during the trial court's hearing, rendering those complaints irrelevant. The trial court also addressed Appellant's belief that the trial court had denied him his Sixth Amendment right to a public trial under the United States Constitution, U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."). On that latter point, the trial court assured this Court that it did not enter any exclusion or closure orders in the case, and that, to the extent that no casual observers were present at the hearing, the trial court "regretted" that any would-be observers likely had better things to do on the Friday before Labor Day. Trial Court's Op., 7/12/24, at 15-16.

7

## III. Discussion

We begin by noting that in summary conviction matters, where the trial court has taken additional evidence in a *de novo* review, our review is limited to considering whether the trial court abused its discretion or committed an error of law. *Commonwealth v. Halstead*, 79 A.3d 1240, 1242 (Pa. Cmwlth. 2013).

### A. Issue Waiver

### *1. Service Requirements*

Initially, Appellant argues that the Township's failure "to serve notice upon him in the manner provided for in the statute deserved a ruling [from the trial court] that the Township had not abided by the procedural due process to which Appellant was entitled." Appellant's Brief at 4-5. Appellant does not further develop this issue in the body of his argument. Based on Appellant's Statement of the Case, however, Appellant appears to object to the Township's service on the basis that the Township's certified mailing of the Notice went unclaimed and that he never received personal service of the same. *Id*. at 1-2.

To the extent that the trial court did not rule on any service issue, it is not due to any reversible error, but because Appellant failed to raise this issue either before the trial court or in his Rule 1925(b) Statement. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." *Rutledge v. Department of Transportation*, 508 A.2d 1306, 1307 (Pa. Cmwlth. 1986) (quoting Pa.R.A.P. 302(a)). Here, this appeal presents Appellant's first objection to the Township's service of the Notice since this litigation commenced in 2023. In fact, while Helbling testified to her notification efforts on direct and cross-examination, *see* Trial Court's Hearing, N.T. at 8-9, 17-18, Appellant's Counsel never developed

any argument concerning notice when prompted to explain his arguments to the trial court. *See id*. at N.T., 46-51. Rather, the arguments pertained solely to *res judicata*, double jeopardy, and the sufficiency of the Commonwealth's evidence.

What's more, as the Commonwealth argues, *see* Commonwealth's Brief at 6, despite complaining of 11 matters on appeal in his Rule 1925(b) Statement, we cannot fairly construe a single complaint to implicate the Township's adherence to the Code's service requirements. Thus, even if Appellant had raised this issue below, we would be precluded from engaging in review of the issue, because "[a]ny issues not raised in a 1925(b) statement will be deemed waived." *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998); *see also* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with provision of this paragraph (b)(4) are waived."). This waiver is automatic. *Commonwealth v. Butler*, 812 A.2d 631, 633 (Pa. 2002).

*2. Res Judicata and Double Jeopardy*

Regrettably, Appellant's filings in this matter require that we also find that Appellant has failed to preserve *res judicata* and double jeopardy for our review. Although Appellant's Counsel raised these defenses below, *see* Trial Court's Hearing, N.T. at 46-47, Appellant abandoned them in his Rule 1925(b) Statement. For the same reasons discussed above, then, Rule 1925(b)(4)(vii) and our Supreme Court's precedence forbids this Court from permitting Appellant to revive this issue on appeal.

While we appreciate that Appellant decided to proceed with his appeal without the benefit of counsel, and that our Supreme Court has instructed us to liberally construe filings from a *pro se* litigant, we cannot look past the considerable

9

defects in Appellant's filings. "*[P]ro se* status confers no special benefit upon a litigant, and a court cannot be expected to become a litigant's counsel or find more in a written *pro se* submission than is fairly conveyed in the pleading." *Commonwealth v. Blakeney*, 108 A.3d 739, 766 (Pa. 2014).

### 3. *"Appropriate Findings of Issues of Law"*

As to the final issue raised in Appellant's Statement of the Questions Presented, we consider this issue to be waived as it is unclear as to what exactly Appellant takes issue with and Appellant makes no attempt to further develop this issue in the body of his argument. *See* Pa.R.A.P. 2116 ("The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case . . . ."); *see also Aveline v. Pennsylvania Board of Probation and Parole*, 729 A.2d 1254, 1256 n.5 (Pa. Cmwlth. 1999) ("We decline to become substitute counsel for appellant, and as such, we will deem an issue abandoned where it has not [been] properly developed in appellant's brief.") (quotations omitted).

### 4. *Vagueness*

Conversely, in the body of Appellant's argument, but not in his Statement of the Questions Presented, Appellant asserts that the Township's Code is unconstitutionally vague as it relates to Section 150 of the Township's Code, 150 Bristol Township Code §150 (property maintenance). First, issues not stated in the statement of the questions presented or fairly suggested thereby will be deemed waived by this Court under Pa.R.A.P. 2116(a). *In re estate of Ryerss*, 987 A.2d 1231, 1236 n.7 (Pa. Cmwlth. 2009). Further, however, it is unclear what bearing

10

this provision of the Code has on the violations Appellant was charged with under Section 134 of the Township's Code, Bristol Township Code §134 (nuisance), such that Appellant has failed to properly develop this issue – necessitating waiver anyway. *Id*. Thus, we will not reach this issue on the merits, although we observe that the trial court ably dealt with this issue in its 1925(a) Opinion below.

### B. Sufficiency of Evidence

In summary offense cases, the Commonwealth is required to establish the defendant's guilt beyond a reasonable doubt. *Commonwealth v. Spontarelli*, 791 A.2d 1254, 1258 (Pa. Cmwlth. 2002). We must consequently view the evidence admitted at trial, together with all reasonable inferences deduced therefrom, in the light most favorable to the Commonwealth. *Commonwealth v. Jackson*, 485 A.2d 1102, 1103 (Pa. 1984). "The test of sufficiency of evidence is whether the trial court, as trier of fact, could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Spontarelli*, 791 A.2d at 1258. Further, the trial court is free to believe all, part, or none of the evidence before it and it is the trial court's exclusive duty to determine the credibility of witnesses. *Commonwealth v. Griscavage*, 517 A.2d 1256, 1257 (Pa. 1986).

First, regarding enumerated nuisances generally, the Township's Code provides:

> The maintaining, using, placing depositing, leaving or permitting to be or remain on any public or private property of any of the following items, conditions, or actions is hereby declared to be and constitute a nuisance; provided, however, that this enumeration shall not be deemed or construed to be conclusive, limiting or restrictive . . .

11

134 Bristol Township Code §134-2.

*1. Overgrown Vegetation*

As relating to weeds and overgrown vegetation:

> Weeds, or any other rank or undesirable vegetation, not edible or planted for some useful or ornamental purpose, which are permitted to grow to a height in excess of 15 inches, which are permitted grow between the property line and the street curbline, which may conceal filth deposits or serve as a breeding place for mosquitoes and noxious odors or pollen or which are otherwise a nuisance within the meaning of "nuisance" in §134-1.

134 Bristol Township Code §134-2(A).

On appeal, Appellant takes no issue with the description of this vegetation as "weeds" which were not planted for some useful or ornamental purpose. Rather, he believes that the Commonwealth did not bear its burden because "the evidence adduced by the [T]ownship as embodied in the testimony of [Helbling] was not specific as required in heights and amount and was merely described generally as things not stated to be contraband in the [C]ode." Appellant's Reply Brief at 8. Appellant therefore finds the instant matter distinguishable from *Spontarelli*, because, therein, the code enforcement officer specifically testified to the height of the vegetation at issue. *Id*.

Our review of her testimony confirms that Helbling never specifically stated that the overgrown vegetation on Appellant's Property exceeded 15 inches. Even so, it is of no moment. Our decision in *Spontarelli*, 791 A.2d at 1258, did not establish a bright-line rule requiring the Commonwealth to elicit testimony establishing the exact height of the vegetation alleged to be overgrown. As we explained therein, the Commonwealth was only required to prove that the vegetation

12

exceeded the limit set forth in the township's code, not an exact height. *See id*. ("Apparently, Defendant believes that the Commonwealth has the burden of proving the exact height of the grass. We disagree."). Although the code enforcement officer in *Spontarelli* did explicitly testify that the height of the grass at issue was in excess of two feet – where the maintenance code forbid overgrowth beyond 10 inches – the officer also offered more colloquial references such as describing the overgrowth as reaching his knees. *Id*. Contrary to Appellant's reading of *Spontarelli*, then, the Commonwealth is not required to elicit some magic words from a code enforcement officer to succeed on an overgrown vegetation violation, it must merely offer some proof that establishes Appellant's guilt beyond a reasonable doubt.

In contrast, consider *Commonwealth v. Solic* (Pa. Cmwlth., No. 168 C.D. 2013, filed October 15, 2013).[6] Therein, in defense of its overgrown vegetation citation, the City of Pittsburgh's code enforcement officer testified that the property owner's weeds were "high . . . throughout the property" and offered photographic evidence of the vegetation. Slip op. at 13. However, the code enforcement officer never testified that the weeds exceeded Pittsburgh's 10-inch maximum height. *Id*. We reasoned that such testimony, "with nothing more, **and no basis for determining height from the photographs**, d[id] not establish guilt beyond a reasonable doubt." *Id*. (emphasis added). Although we determined that Pittsburgh failed to carry its evidentiary burden, as in *Spontarelli*, this Court's focus seized not upon specific testimony, but upon whether the evidence adduced before the trial court proved the property owner's guilt beyond a reasonable doubt.

---

[6] *See* Pa. R.A.P. 126(b)(1)-(2) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value.").

13

Here, the Commonwealth's photographic evidence leaves no doubt that Appellant is in violation of Section 134-2(A) of the Township's Code because it is readily ascertainable that the vegetation exceeds 15 inches. In some instances, the photographs depict vegetation more than half as tall as a single story of Appellant's home, *see* O.R., Exhibit No. CW-2, or vegetation tall enough to cover a motorcycle leaning against a tree. *Id.*, Exhibit No. CW-1. Thus, unlike *Solic*, the Commonwealth's photographs provide a basis for determining that the vegetation exceeded 15 inches.

Further, although much of Helbling's testimony on this point (as well as Appellant's) related to whether the vegetation included poison ivy, poison oak, and/or poison sumac, *see* Trial Court's Hearing, N.T. at 27-28, Helbling also described the vegetation on the Property as "overgrown" or "excessively overgrown" multiple times throughout her testimony. *See, e.g.*, *id.*, N.T. at 12, 27. With or without Helbling's explicit confirmation that the undesirable vegetation exceeded 15 inches, the Commonwealth bore its evidentiary burden regarding this violation through photographic evidence and supporting testimony. *Spontarelli* does not compel a different result and we therefore conclude that the trial court did not err on this point.

*2. Trash Covered Yard*

Next, Section 134-2(C) of the Township's Code identifies the following conditions as constituting a nuisance: "Filthy, littered or trash-covered cellars, house yards, barnyards, stable yards, factory yards, vacant areas in rears of stores, vacant lots, houses, buildings or premises." 134 Bristol Township Code §134-2(C).

14

We observe that to the extent Appellant challenges the sufficiency of the Commonwealth's evidence concerning the remaining citations, he generally asserts that the trial court relied on its own subjective interpretation of the evidence and the judge's own aesthetic tastes. For example, Appellant posits, the trial court's decision relied on its belief that the Property was "filthy" rather than any concrete evidence, much like the measurement of the vegetation at issue above. Appellant's Brief at 5-6. The Commonwealth responds by arguing that the copious photographic and testimonial evidence, by Helbling and Appellant himself, indicate that the Commonwealth bore its evidentiary burden with respect to each violation it pursued before the trial court. Commonwealth's Brief at 6-9.

Here, the Commonwealth's photographic evidence confirms that Appellant's Property was littered with construction materials like scraps of wood, numerous tarps which do not appear to cover anything, an out-of-place propane tank among other debris, and a number of plastic bottles. *See* O.R., Exhibit Nos. CW-1 and CW-2. As Helbling's testimony also confirms, scrap metal and other discarded building materials littered the Property. Trial Court's Hearing, N.T. at 14-16. If littered means "strew[n] with scattered articles" or "scatter[ed] about in disorder," then Appellant's yard is certainly littered or trash-covered within the meaning of Section 134-2(C) of the Township's Code. *Litter*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/littered (last visited September 18, 2025). Given the evidence adduced before the trial court, we have no difficulty concluding that the Commonwealth bore its burden of proving Appellant's guilt beyond a reasonable doubt.

### 3. Unsightly Accumulation of Junk

Section 134-2(M) of the Township's Code provides:

> Any unsightly or malodorous accumulation of junk, garbage, animal feces, broken glass, scrap automobile parts, mattresses, broken stone or cement, crates, barrels, boxes, scrap metal, scrap lumber, used tires, discarded building material, appliances or fixtures, or dismantled machinery on public or private property unless the property is in lawful use for junk storage or recycling in compliance with applicable state and federal laws and Township ordinances.

134 Bristol Township Code §134-2(M). The same evidence discussed above readily supports the Commonwealth's evidentiary burden concerning this violation such that we discern no error in the trial court's decision.

### 4. Storage of Inoperable or Dismantled Vehicles

Concerning the fourth violation, the Township's Code provides:

> Any partially dismantled, wrecked, junked, discarded, disabled, inoperative or unlicensed motor vehicle which is parked, kept or stored on any exterior property for more than seven days, including but not limited to vehicles that lack an engine, one or more tires or other essential parts, vehicles that have become a haven for vermin, are maintained in a precarious or dangerous location, have broken glass or other sharp edges or otherwise present a threat to the health, safety or welfare of the public. A vehicle is permitted to undergo repair, provided that such work is performed inside a structure or similarly enclosed area designed and approved for such purposes.

134 Bristol Township Code §134-2(N).

Here, Helbling testified:

Q. Does it appear to be what looks like either a motorcycle or some type of dirt bike with only one wheel?

16

A. Correct.

Q. Can you describe in the picture where that is for everyone?

A. It is right in front of the tree. It looks like it has a gas tank, red or orange gas tank right in front of the tree. And you see the one wheel to the right and there's no wheel to left.

Trial Court's Hearing, N.T. at 10. On direct examination by Counsel, Appellant agreed that the motorcycle was disabled but disclaimed any ownership over it. *Id*., N.T. at 38-39. As indicated, Appellant testified that the motorcycle belongs to a neighbor who has agreed to move it to his own property but has yet to do so for fear that the Township will cite him with the same violation of the Code. *Id*.

Indeed, the Commonwealth's photographic evidence confirms that a red Honda motorcycle is being stored on the Property's exterior. The motorcycle is leaning against a tree and only the front wheel is visible. *See* O.R., Exhibit No. CW-1. Because much of the motorcycle is completely covered by overgrown vegetation – the motorcycle appears to be entrapped by weeds – it must necessarily have been stored on the Property for more than seven days. Between the testimonies adduced at the trial court's hearings and the Commonwealth's photographic evidence of the motorcycle, the Commonwealth proved beyond a reasonable doubt that Appellant is in violation of Section 134-2(N) of the Township's Code.

### 5. Unsightly Building in Disrepair

As to the final violation, the Township's Code provides:

Any unsightly building, billboard or other structure, or any old, abandoned or partially destroyed building or structure or any building or structure commenced and left unfinished, which said buildings, billboards or other

structures are either a fire hazard or a menace to the public health or safety or are so unsightly as to depreciate the value of property in the vicinity thereof.

134 Bristol Township Code §134-2(D). Here, concerning the condition of Appellant's home, Helbling, describing the photograph she had taken, testified:

> This is the front of his house. To the right-hand side is actually his front door, its kind of cut off a little bit, but you can clearly see the window to the left is falling off. It's not clearly weathertight. The top of the roof is missing. There is a piece of plastic that's being used as the roof right now. Part of the house is being – falling down. There is exposed insulation [and] panel boards that are there.

Trial Court's Hearing, N.T. at 16; *see also* O.R., Exhibit Nos. CW-1 and CW-2. The Commonwealth's photographic evidence indicates and Helbling's testimony confirms, that the house on Appellant's Property is suffering from profound structural issues such that it barely resembles a home and it is likely to depreciate the value of property in the vicinity thereof. Thus, the Commonwealth bore its evidentiary burden on this point and we discern no error in the trial court's decision.

## IV. Conclusion

Accordingly, the trial court's order is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania :
:
v. : No. 1467 C.D. 2023
:
William J. Tataren, :
:
Appellant :

**O R D E R**

AND NOW, this 19th day of September, 2025, the September 1, 2023 order of the Bucks County Court of Common Pleas is **AFFIRMED**.

_____
MICHAEL H. WOJCIK, Judge